[L. A. No. 16865. In Bank.—April 25, 1940.]

CALIFORNIA–WESTERN STATES LIFE INSURANCE COMPANY (a Corporation), Respondent, v. PHILIP FEINSTEN et al., Appellants.

L. E. Dadmun for Appellants.

John J. Ford, Frank M. Benedict and Ford, Benedict & Ford for Respondent.

THE COURT.—This appeal was taken from a judgment entered in favor of plaintiff in an action brought by the plaintiff insurance company to have canceled the disability provisions of an insurance policy issued to defendant Philip Feinstein. The other defendants are beneficiaries under the life provisions of the policy.

The facts as found to be true by the trial court appear as follows: That on or about the 28th day of October, 1925, the

plaintiff's predecessor issued a life insurance policy in favor of defendant Philip Feinstein; that a premium which was due the plaintiff company on October 28, 1935, was not paid when due, nor during the grace period thereafter; that on November 28, 1935, by reason of such nonpayment of premium, the policy lapsed; that on or about December 30, 1935, the insured executed a written application for the reinstatement of said policy (which at that time included provisions for both total and permanent disability benefits); and that on January 10, 1936, the company purportedly reinstated the said policy.

It was further found that for the purpose of inducing the plaintiff to reinstate the policy the insured made false representations in the application therefor, to the effect that at the time he executed the same he had no "injury, deformity or symptoms of sickness" nor had he "consulted a physician for any ailments since said policy of insurance was issued"; that the representations were made with the intent that the plaintiff should rely and act thereon; and that the plaintiff, "relying solely upon the representations" made by the insured and without knowledge of the falsity of the representations, reinstated the policy. It also was found that the insured had declared in the application that he had carefully read each of the answers to the several questions; that they were each written as made by him and that each was "full, complete and . . . true when made", although at that time he knew them to be false. Furthermore, in that connection it was found that if the insurer had known that the representations were false it would not have reinstated the provisions of the policy which related to total and permanent disability benefits, which had been set forth in a rider attached to the policy and designated "Special Benefits".

It also appeared that on June 1, 1936, approximately five months after the policy had been reinstated, the insured made application for both total and permanent disability benefits under the policy, and in said application he disclosed the names of doctors with whom he had consulted both before and after he had executed the application for reinstatement. Upon receipt by the plaintiff insurer of the application for disability benefits, for the first time it learned of the falsity of the representations which the insured had made in his application for reinstatement of the policy. Thereafter, the insurance company brought the instant action to have rescinded

those provisions of the policy which related to total and permanent disability benefits.

On the trial it was shown by uncontradicted evidence that on August 12, 1935, the insured had consulted Dr. Samuel Swezey, a physician and surgeon, with regard to certain physical ailments of which the insured complained at that time, and that thereafter he had undergone a series of twenty-six treatments by Dr. Swezey, the final of which occurred on October 16, 1935. It also appeared that in November, 1935, the insured had consulted an osteopathic physician for similar ailments.

However, in other respects, the evidence was sharply conflicting, as shown by the following *résumé:* The insured testified that on December 30, 1935, at the time he executed the application for reinstatement, he was present at the office of his son, Jerry Feinstein (who also was engaged in the insurance business); that on that occasion Mr. Gerald Page, one of the insurer's agents, brought the application form to that office and requested the insured to write his answers to the questions set forth therein; and that the insured thought the form was an application to change the premium payments on the policy. With regard to the first question which related to whether applicant had consulted a physician for any ailments since issuance of the policy, and whether he was then suffering from any illness, injury, etc., the insured testified that he had stated to Mr. Page that he had seen a doctor with reference to a cold and indigestion, and inquired "whether that meant anything"; and that Mr. Page, in effect, had replied that the company was not interested in minor ailments— that if the insured had not been in a hospital nor had an operation he could write the answer "no" to the first question. The insured further testified that after the application form had been filled in Mr. Page signed it (as a witness) and *took it away with him.* The foregoing testimony was corroborated by Jerry Feinstein who asserted he was present when the conversation last referred to took place, and that he had heard Mr. Page state that the application form was one which related to a change in the premium payments. It might here be stated that despite Philip Feinstein's testimony that Mr. Page had told him that he could write the answer "no" to the first question, the insured did not at that time nor at any time thereafter fill in an answer to that question;

in fact, it was conceded that that question remained unanswered until after the executed application had been returned to the plaintiff insurance company.

In direct conflict with the testimony set forth by the insured concerning the time and place at which the application for reinstatement was made is that adduced by the plaintiff. In that regard Mr. Page gave positive testimony that he did not take the application form to Philip Feinstein in person; that not only was it sent to the latter through the mail but that it was returned to the company by mail; and that Mr. Page was not present on December 30, 1935, at the time or place mentioned by the insured in the presence of either Philip or Jerry Feinstein, or otherwise. Mr. Page further testified that after the application had been returned to the company he had examined and signed it and on discovering that the first question had not been answered he telephoned to Philip Feinstein and informed him of his failure in that regard; that he asked the insured what answer he desired to make to the said first question; and that he was told the answer would be "no", whereupon Mr. Page wrote that answer in the blank space provided therefor. Another of the plaintiff's employees, Mr. John A. Mason, who acted as cashier of the insurance company, testified that the executed application was returned to the office of the company *through the mail* on December 31, 1935. He also testified that the words "Received, December 31, 1935, Southern California Branch Office" which were shown to have been stamped on the back of the application form were imprinted thereon by a stamp which the plaintiff company was using at that time to record the date of receipt of incoming mail.

It further appeared that in filling in the blanks on the application form the insured gave an affirmative answer to the question "Did the attached application for reinstatement come to you by mail?" On the trial the insured was asked why he wrote the word "yes" as his answer to the question above quoted. He replied that Mr. Page had told him to answer that question in the affirmative. However, it was shown that that question appeared in a portion of the printed form of application which contained questions not intended to be answered by the applicant but which was designed for the notation of data to be made by the insurer after the executed application form had been returned to the latter. Also it

appeared that the insured had not placed his signature on the line designated therefor in the application, but that he had placed it likewise in that portion of the application form which was not intended to be completed by the insured.

It is at once apparent that the conclusions to be drawn by the trial court from the testimony hereinbefore recited, together with the inferences which might have been drawn therefrom, became of paramount importance in the determination of the question of the right of the plaintiff insurance company to rescind the contract on the ground that it had been induced to reinstate the insurance policy by reason of the false representations made by the insured in the application for reinstatement. The trial judge, who saw the witnesses and heard them testify, believed the evidence adduced by the plaintiff, namely, that the application form had been executed by the insured at a time when Mr. Page was not present; that the insured had returned the same to the plaintiff through the mail; and that thereafter he had voluntarily authorized the writing of the answer ''no'' to the first question, as hereinbefore referred to.

The record shows that the trial court drew the following inferences from the evidence hereinbefore recited: That had Mr. Page been present personally when the application form was executed, he then and there would have required Mr. Feinstein to fill in the answer to the first question—and, therefore, that that answer would not have appeared on the form in Mr. Page's handwriting; that he would have made certain that the signature of Mr. Feinstein was placed on the proper line designated therefor in the application form, and that he would not have permitted it to be placed in a portion of the form not intended to be used by the insured; furthermore, that had Mr. Page been present he would have examined the form and found that the insured had signed his name on the wrong line, and he would then have requested the latter to re-sign his name on the proper line. Also, with regard to the testimony of the insured that he thought the form which Mr. Page gave him was a form for change of premium payments, the trial court drew the inference that if Mr. Page in fact had been present he would not have made any statement to that effect—since the latter was shown to have been familiar with the various printed forms used by the insurer in its business and, therefore, he would not have

represented that particular form to be anything other than what it was, inasmuch as no purpose would have been served at that time by the making of a misrepresentation in that regard. It further was shown that the insured had permitted the policy to lapse on other occasions in the past and as a consequence thereof in each such former instance, in accordance with the terms of the policy, the insured had executed a form of application for reinstatement practically identical in language with that here concerned; that, therefore, he could not be said to have been unfamiliar with the nature of the particular form which he executed on December 30, 1935, and that, consequently, his statement that he thought the application form was one for change of premium payments was open to question.

Also, with regard to the fact that the insured wrote the answer ''yes'' to the printed question whether he had received the form of application through the mail,—aside from the fact that that question was not intended to be answered by the insured,—there appears to have been no reason at that time for the making of a false answer thereto. Therefore, the trial court might well have inferred that had Mr. Page been present he would not have told the insured to write the answer ''yes'' to that question, nor would he have permitted the insured to write anything whatever in the space reserved for data to be recorded by the insurer.

Other evidence, both written and oral, was adduced by the respective parties which tended to support that given by each on the question whether Mr. Page was present when the application form was executed and was therefore in a position to have advised the insured in the respects testified to by the latter, or whether in fact the insured executed the application form without such asserted advice and returned it by mail to the insurer. ■ However, sufficient has been set forth hereinbefore to indicate that the evidence presented a clear and substantial conflict. Not only was the evidence elicited from each party diametrically contrary to that offered by the other on material questions, but in some respects the evidence thereon offered by each was in itself conflicting. Under those circumstances, it is a well-established rule that on a review of the evidence, together with the inferences which could have been drawn therefrom, the conclusion to be reached was solely for the trial court, who saw the witnesses and heard

them testify, and that the findings made thereon by the trial court may not be disturbed.

Appellants contend that under the provisions of the policy that relate to "paid-up" and "automatic extended insurance", after three full years' premiums have been paid, a forfeiture of the policy (including both life and disability insurance) could not have been declared because of the insured's failure to make the premium payment before termination of the grace period. It here may be said that the validity of the life provisions of the said policy are not being questioned. However, respondent points to certain language of the life policy as well as to that appearing in the provisions of the disability insurance which, it contends, shows conclusively that the provisions for "automatic extended insurance" were intended to apply only to that part of the policy that relates to life insurance, as distinguished from the provisions of the rider which cover the "Special Benefits" or disability insurance. One of the provisions of the rider is as follows: "If at any other time than at the end of the original premium payment period this policy shall be continued under any paid-up or extended insurance provisions thereof, these 'Special Benefits' shall thereupon become null and void and all liability of the Company under the same shall cease." In that regard respondent cites the case entitled *Henricks* v. *Metropolitan Life Ins. Co.*, 7 Cal. (2d) 619 [61 Pac. (2d) 1162], in which the court was construing section 450, Civil Code (now section 10151, Ins. Code), and in which case it was pointed out that the section was designed to prevent the loss of the reserve to the insured (in the event of nonaction on the part of insured) where a life insurance policy had lapsed by reason of nonpayment of a premium after three full years' premiums had been paid thereon. In that case it was held that under the language of the code section and "by the great weight of authority . . . double indemnity benefits are not carried over to nonforfeiture insurance". Furthermore, in the instant case, the provisions with regard to paid-up insurance state that after three full years' premiums shall have been paid on the said policy, the company "will grant to the Insured an amount of paid-up *life* insurance, not less than the cash value, if any, will purchase". And in that part of the policy relating to "automatic extended insurance", it is provided that after premiums have been paid thereon for

three full years, in event of nonpayment of premium before date when due, the full amount of insurance under the policy will be automatically extended from said due date "as term insurance" for such period as the cash value of the policy, if any, less any indebtedness thereon, "will purchase as a net single premium at the then attained age of the Insured, according to the American Experience Table of Mortality"— which calculation obviously would not be used in connection with *disability* insurance. It is also stated in the last-mentioned provision that in lieu of such "automatic term insurance", upon proper request therefor by the insured, the company "will endorse on the policy the amount of paid-up *life* insurance which the excess of the cash value of this policy, if any, over such indebtedness will purchase at the then attained age of the Insured on the mortality and interest basis heretofore designated, or will pay said excess in cash". (Emphasis added.) From the foregoing it is clear that the provisions of the policy here concerned which relate to automatically extended insurance may not be held applicable to the "Special Benefits" (disability) insurance.

 Appellants further argue that even assuming that there was a breach in the insurance contract by the failure of insured to pay the premium which fell due on October 28, 1935, the company "continued to recognize the existence of the policy as in force until October 9, 1936", and that such conduct on the part of the insurer constituted a waiver of the breach. However, in making that contention appellants apparently have overlooked the force and effect of the fact that by virtue of its having required,—pursuant to its right in that regard,—shortly after November 28, 1935, that the insured execute an application for *reinstatement,* the respondent necessarily had recognized the lapsing of the policy as of that date. Under the facts hereinbefore stated, it therefore cannot seriously or successfully be contended that respondent "continued to recognize the existence of the policy as in force" from October 28, 1935, until October 9, 1936. Obviously, the fact that following lapse of the policy the insurer required the insured to execute an application for reinstatement would negative any asserted claim by the insured that the insurance company had waived its right to recognize the policy as having lapsed. The evidence shows that on December 2, 1935, and again on December 13, 1935, the insurer

mailed a letter to the insured concerning a proposed plan to change the method of payment of the premiums, and that in each of those letters the insurer urged a reply "by return mail in order to keep the policy in force", but that the insurer received no reply to either of those letters. The most that can be said concerning the effect of those letters is that, before exercising its right to require the insured to file an application for reinstatement, the insurer was extending to the insured a reasonable opportunity to keep the policy in force, which was made conditional upon its receipt of a prompt reply from the insured. It also appears that on December 27, 1935, the insurer again wrote to the insured stating that on December 26, 1935, it had received from him the "Blue Note" (in accordance with the plan of premium payment theretofore used by the parties), but advising the insured that since the grace period had expired on November 28, 1935, it would require him to sign "the attached health certificate" (application for reinstatement). As hereinbefore has been indicated, the insured was familiar with the procedure of the insurance company in the matter of requiring the filing of an application for reinstatement following lapse of the policy for nonpayment of premiums. The evidence does not show that the insurer misled the insured into believing it had waived the lapsing of the policy (*McDanels* v. *General Ins. Co.*, 1 Cal. App. (2d) 454, 460 [36 Pac. (2d) 829]), nor that the company was lax in the matter of exercising its right to compel the insured to make an application for reinstatement.

Nor may it be said that the insurer could have waived its right to rescind, on the ground of false representations made by the insured in his answers to the questions as set forth in the application for reinstatement, until the insurer had become aware of the falsity of those representations. (*McDanels* v. *General Ins. Co., supra; Schick* v. *Equitable Life Assur. Soc.*, 15 Cal. App. (2d) 28, 34 [59 Pac. (2d) 163].) It was only after the insured had filed his claim for disability payments in June, 1936, at which time an investigation was made with regard to the ailments for which he had undergone treatment by a physician, that the falsity of the representations which the insured had made in the application for reinstatement was disclosed. On that state of the record it cannot be said that the insurer had waived any of the rights which it subsequently asserted against the insured.

■ Appellants next contend that the representations made by the insured in the application form were not material representations in that the illness for which insured had received the several treatments in the fall of 1935, assertedly, was not of a substantial character and, consequently, that a failure on his part to disclose such illness did not constitute fraud. However, a reading of the application shows that the insured was not questioned with respect to the gravity of the illness, if any, for which he had consulted a physician. The question presented was "Have you consulted a physician for any ailments since the above-numbered policy was issued? List below all details in regard thereto . . . " That question merely called for information relating to simple matters of fact within the knowledge of the insured. It has been held that answers to written questions set forth in application forms relative to insurance are generally *deemed* material representations (*Pierre* v. *Metropolitan Life Ins. Co.*, 22 Cal. App. (2d) 346 [70 Pac. (2d) 985]; *Iverson* v. *Metropolitan Life etc. Co.*, 151 Cal. 746, 749 [91 Pac. 609, 13 L. R. A. (N. S.) 866]; *Westphall* v. *Metropolitan Life Ins. Co.*, 27 Cal. App. 734 [151 Pac. 159]; *McEwen* v. *New York Life Ins. Co.*, 42 Cal. App. 133, 146 [183 Pac. 373]); and that in the making of a false representation which is material to the risk the presence of an intent to deceive is not essential. (*Telford* v. *New York Life Ins. Co.*, 9 Cal. (2d) 103, 105 [69 Pac. (2d) 835].) ■ The materiality of a representation is to be determined "solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries". (Ins. Code, sec. 334.) In the present case it also appears from one of the provisions of the policy that following default in the payment of a premium the policy might be reinstated "upon production of evidence of insurability *satisfactory to the Company*". (Emphasis added.) In the case of *Greenburg* v. *Continental Cas. Co.*, 24 Cal. App. (2d) 506 [75 Pac. (2d) 644], the court was construing a provision of an insurance policy which was practically identical in language with that just referred to, and it was there held that by making that language a part of the contract the parties had agreed to place on the insurer the responsibility of the determination of the question whether the "evidence of insurability" was

satisfactory. (See, also, *Columbian Nat. Life Ins. Co.* v. *Morey,* 26 Fed. (2d) 580, 582, C. C. A. 1st, 1928.) Moreover, the record shows that evidence was elicited on the part of the insurer to the effect that where an insured sought reinstatement and was found to have been of the age of insured herein and to have shown the symptoms manifested by him at the time he consulted Dr. Swezey, in accordance with a practice or custom in existence among life insurance companies, such a disclosure would have led either to a rejection of the application for reinstatement or to an investigation of the underlying causes which gave rise to the symptoms reported. Much of the medical evidence adduced by the insurance company in the present case was to the effect that the symptoms shown by the insured at the time he consulted Dr. Swezey in August, 1935, were possible indications of a heart condition such as the insured claimed to have been suffering from in June, 1936. Therefore, under the circumstances hereinbefore recited, it may not be said that the information which the insurer sought to obtain by the questions set forth in the application form was not material to the risk.

Appellants also contend that the court erred in its rulings on the admissibility of evidence presented by insurance experts on behalf of the respondent insurer. This court finds no error in that regard. The questions propounded to those witnesses did not call for an opinion on the question whether the undisclosed facts here in issue were material to the risk. The witnesses were merely asked relative to a usage or custom of insurance companies in the matter of rejecting a risk had the companies been apprised of facts such as here were concealed. (*Boyer* v. *United States F. & G. Co.,* 206 Cal. 273 [274 Pac. 57].)

In view of the conclusions reached herein it becomes unnecessary to discuss other contentions made by counsel.

The judgment is affirmed.