[Civ. No. 37732. First Dist., Div. One. Oct. 28, 1976.]

WILLIAMSON & VOLLMER ENGINEERING, INC.,
Plaintiff and Appellant, v.
SEQUOIA INSURANCE COMPANY, Defendant and Respondent.

264

**COUNSEL**

Bronson, Bronson & McKinnon, Paul H. Cyril, Steven D. Hallert and Samuel D. Davis for Plaintiff and Appellant.

Gordon & Rees, Donald W. Rees and Robert J. Brown for Defendant and Respondent.

**OPINION**

**SIMS, J.**—Plaintiff, a small engineering firm that provides electrical and mechanical engineering design services, has appealed from an adverse

judgment in an action in which it sought a declaration that the defendant insurer was obligated to defend it and indemnify it, within the policy limits, against a claim, asserted by an architectural firm to whom it had furnished services, seeking recovery of indemnity for any loss it may incur on the owner's claim for damages for negligence in the design and supervision of work for which the engineering firm was allegedly responsible.

The principal issue is whether the answers to two questions contained in the application for the policy of insurance issued by defendant evidenced a misrepresentation and concealment of material facts in the light of the circumstances known to the applicant at that time. Subordinate issues are: if so, whether defendant was entitled to the relief afforded by the trial court, whether the claim presently asserted was excluded from coverage by the terms of the policy, and whether the defendant insurer was bound to defend even if not bound to indemnify. Since all of those issues must be resolved against the insured it is unnecessary to consider the insurer's further contentions, offered in support of the judgment, that it was relieved of responsibility under the terms of the policy because the insured elected to handle the claim itself, and that the insured was not the real party in interest because it had assigned its rights to the architect.

On October 28, 1968, plaintiff contracted with the architect to provide electrical and mechanical engineering services for the College of Marin Library project. Under the terms of that contract plaintiff was required to have professional liability insurance. Apparently whatever insurance the engineering firm once had lapsed by April 1973. At that time it consulted a broker for the purpose of securing such insurance. The broker requested a quotation from defendant insurer, and, after receiving additional information which it requested, the insurer sent a quotation valid for 30 days on May 15, 1973. At or about the same time a question arose concerning defects in the mechanical design of air conditioning, heating, and ventilation systems in the library. The nature of the engineering firm's knowledge of that problem is reviewed below.

The plaintiff because of financial difficulties failed to act on the quotation until August 2, 1973, when it sent the broker a check for the quoted premiums. Since the original quotation had lapsed, the insurer required a new application form. The broker copied the original

application and sent it to plaintiff's president with instructions to review it carefully and note any changes. The application was returned without change and was sent to defendant by the broker. On August 13, 1973, the insurer issued its policy effective August 10, 1973, for a period of one year with a limit of $100,000 over a $5,000 deductible. The material terms of the application and policy are reviewed below.

In 1974 the contractor brought an action against the owner to recover payments which it alleged were wrongfully withheld for work performed on the general contract. The owner cross-complained against the architect, who in turn, in May 1974, filed a cross-complaint against the engineering firm. That firm tendered defense of the architect's claim to the defendant insurer, and it refused to defend or indemnify. This action resulted.

Preliminarily, we note that no findings of fact and conclusions of law were requested by either party. (See Code Civ. Proc., § 632; and Cal. Rules of Court, rule 232.) The court's judgment provides as follows: "(1) Defendant SEQUOIA has no duty to defend or indemnify plaintiff with respect to claims arising out of plaintiff's performance of its contract with Corwin Booth & Associated Architects pertaining to the College of Marin—Library. [¶] (2) Defendant SEQUOIA has no duty to defend or indemnify plaintiff with respect to the claim of Corwin Booth & Associated Architects asserted against plaintiff in a cross-complaint in action number 70071 in the Superior Court of the State of California, in and for the County of Marin."

"Findings having been waived, every intendment is in favor of the judgment, and, therefore, upon all of the issues raised by the pleadings, it must be presumed that the trial court, in effect, found all the facts necessary to support the judgment in favor of the plaintiff. [Citations.]" (*Gray* v. *Gray* (1921) 185 Cal. 598, 599 [197 P. 945]. See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 235, p. 4226.)

■ Furthermore, under the substantial evidence rule, the scope of review is limited as follows: " 'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' (*Primm* v. *Primm* (1956) 46 Cal.2d

690, 693 . . .) [¶] 'It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact.' (*Tesseyman* v. *Fisher* (1952) 113 Cal.App.2d 404, 407, other citations omitted.) Defendants' contention herein 'requires defendants to demonstrate that there is *no* substantial evidence to support the challenged findings.' (Italics added.) (*Nichols* v. *Mitchell* (1948) 32 Cal.2d 598, 600, other citations omitted.)" (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]. See *Cal.-West. States etc. Co.* v. *Feinsten* (1940) 15 Cal.2d 413, 419-420 [101 P.2d 696, 131 A.L.R. 608]; and cf. *Thompson* v. *Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 919 [109 Cal.Rptr. 473, 513 P.2d 353].)

I

The questions and the answers thereto, which were inserted in the original application forwarded to the company on April 27, 1973, and reinserted in the application forwarded to defendant on August 8, 1973, read as follows: "19A. Has any claim ever been made against the Applicant or against any persons named in question # 8 above? *yes* If so, state briefly the cause and nature of the claim including the amount involved and names of the project and the claimant, the date when the claim was made, the date the act giving rise to the claim was committed and the final disposition: [¶] *General Contractor backcharged plumbing contractor because of sprinkler line fractured—1969, Concord Community Hospital. Design Work done 68/69. Plumbing contractor filed suit against owner, architect, general contractor and applicant. Applicant contributed $4,000 towards settlement out of court.* [¶] 19B. Is the Applicant aware of any circumstances which may result in any claim against him, his predecessors in business, or any of the present or past partners or officers? Yes No *X* If yes, please give full details on the same basis as 19A." (Italics indicates the answers which were inserted by the broker from information received from the plaintiff's president, and which were adopted by his execution of the application.)

The evidence concerning plaintiff's knowledge of the claim which subsequently formed the basis for the architect's cross-complaint filed in May 1964 is as follows: On April 5, 1973, the architect sent a letter to the general contractors with a copy to plaintiff stating that "Our Engineers agreed to pay for all work related to the solution of this problem." The author of the letter testified that this statement represented an agreement

by plaintiff to pay for the defective work. On April 24, 1973, plaintiff wrote to the architect describing three inspections that plaintiff made of the problems, noting numerous deficiencies, and concluding that the general and subcontractors were not completing the work according to specifications. On May 15 the architect sent the letter set forth in the margin to the engineering firm.[1]

On June 29, 1973, plaintiff and the architect were advised of two unfavorable reports on the mechanical system. On August 8, 1973, the architect sent plaintiff a copy of a letter to the college concerning the defective work. Plaintiff also received a copy of the architect's letter to the general contractor concerning the corrective work.

The parties have focused on the letter of May 15, 1973. The insurer contends that there was misrepresentation and concealment in the August application. (See Ins. Code, §§ 330, 331, 332, 334, 356, 358, 359 and 360; *Cal.-West. States etc. Ins. Co.* v. *Feinsten, supra,* 15 Cal.2d 413, 423-424; *Burns* v. *Prudential Ins. Co.* (1962) 201 Cal.App.2d 868, 871 [20 Cal.Rptr. 535]; *Cole* v. *Calaway* (1956) 140 Cal.App.2d 340, 347 [295 P.2d 84]; *Mirich* v. *Underwriters at Lloyd's London* (1944) 64 Cal.App.2d 522, 529-530 [149 P.2d 19]; 12 Appleman, Insurance Law and Practice, § 7271, p. 374, § 7275, p. 383, § 7291, p. 390 and § 7292, p. 392; and 7 Couch on Insurance (2d ed. 1961) § 35:109, p. 123, § 35:119, p. 137 and § 35:140, p. 157.)

Insofar as there was no extrinsic evidence concerning the matter, the interpretation of the meaning of the questions is a matter of law upon

---

[1]The letter reads:

"This letter is to notify you that there are major deficiencies in the air distribution system on this project which are at least partly caused by the installation of ducts that are smaller than called for on the construction drawings. These reduced duct sizes were shown on the shop drawings submitted by the Contractor and approved by your firm and, therefore, we must hold your firm responsible for correcting the condition.

"You are free to work with the Contractor in keeping the corrective costs at a minimum and if there is corrective work, for which the Contractor is responsible, we would expect you to advise us so that we can issue the proper instructions to the Contractor. However, we will backcharge your firm for all corrective work not within the responsibility of the Contractor.

"From our meeting with Bill Dewey on Friday last, we understand that is agreeable that the work is to be done on a time-and-material basis and we have authorized the Contractor to proceed with the work on this basis. If you want to use another method for determining cost, please let me know.

"Enclosed is a copy of drawing CO 116 and 117, showing the detail for the two 5 ft. × 5 ft. holes through the roof."

which this court should make an independent determination. (See *Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385]; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Becker* v. *State Farm Mut. Auto. Ins. Co.* (1975) 52 Cal.App.3d 282, 284 [124 Cal.Rptr. 739]; and 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 260, pp. 4250-4251.)

A "claim" has been defined in ordinary English as "a demand for something due or believed to be due." (Webster's New Collegiate Dict. (7th ed. 1972) p. 152.) Each party refers to the definition of claim set forth in *San Pedro Properties, Inc.* v. *Sayre & Toso, Inc.* (1962) 203 Cal.App.2d 750 [21 Cal.Rptr. 844] [disapproved on another issue *Gyler* v. *Mission Ins. Co.* (1973) 10 Cal.3d 216, 220 [110 Cal.Rptr. 139, 514 P.2d 1219]]. There the court collated definitions from prior precedents as follows: " 'The word [claim] is derived from the Latin clamor, meaning a call, a demand. In its ordinary sense the term imports the assertion, demand or challenge of something as a right; the assertion of a liability to the party making it to do some service or pay a sum of money . . .' [Citation.] [¶] A "claim" refers to a debt due the claimant. [Citation.] It is a money demand. [Citation.] [¶] 'Claim' means 'To ask for, or seek to obtain, by . . . right, or supposed right; to demand as due.' [Citation.] [¶] A claim connotes an assertion of a legal right, as distinguished from a recognition of that right. [¶] 'Claim' is not synonomous with 'accident' or 'occurrence' under the circumstances of this case." (203 Cal.App.2d at p. 755, some quotation marks and citations omitted for clarity. See also *Gribaldo, Jacobs, Jones & Associates* v. *Agrippina Versicherunges A.G.* (1970) 3 Cal.3d 434, 447 [91 Cal.Rptr. 6, 476 P.2d 406]; and *J. G. Link & Company* v. *Continental Casualty Company* (9th Cir. 1972) 470 F.2d 1133, 1136 [cert. den. (1973) 414 U.S. 829 (38 L.Ed.2d 63, 94 S.Ct. 55)].)

■ In its memorandum of decision the trial court stated, "The Court finds that the facts known to Williamson & Vollmer at the time the application was submitted were sufficient to constitute a claim, as well as circumstances that might result in a claim." The letter dated May 15, 1973, clearly indicates that the architect was asserting that the engineering firm erroneously approved shop drawings which failed to comply with the construction drawings, that it held the latter responsible for correcting the condition, and would backcharge it for all corrective work which was not the responsibility of the contractor on a time and material basis for the corrective work. We cannot say as a matter of law that the

letter itself did not constitute a claim, within the definitions set forth above, much less, that it should not have produced an awareness of circumstances which would result in a claim.

The insured seeks to rely on the general principle that ambiguous terms should be construed against the insurer's interest. (See, e.g., *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 101-102 [109 Cal.Rptr. 811, 514 P.2d 123]; *Glens Falls Ins. Co.* v. *Rich* (1975) 49 Cal.App.3d 390, 394-395 [122 Cal.Rptr. 696]; and *Jefferson etc. Life Ins. Co.* v. *Anderson* (1965) 236 Cal.App.2d 905, 912-913 [46 Cal.Rptr. 480].) The plaintiff points out that since question 19 asks for "the amount involved" it can only require the disclosure of liquidated claims, and here there was no certainty as to the amount of money involved. On the other hand, it was clear that the architect was making a demand for an amount of money which would cover the time and materials necessary to correct the work.

The engineering firm would distinguish between the lodging of a grievance and a formal demand for compensation. (See *American Mutual Liability Ins. Co.* v. *Goff* (9th Cir. 1960) 281 F.2d 689, 692 [cert. den. 364 U.S. 920 (5 L.Ed.2d 260, 81 S.Ct. 284)].) It is ridiculous to refer to the quoted letter (see fn. 1 above) as a mere "notification of displeasure." The facts of the cited case, upon which plaintiff relies, are clearly distinguishable. It is also clear that the word "claim" was not limited to a formal lawsuit. The policy itself recognized that the obligations of the insurer would arise in respect of either claims made or suit instituted during the policy period (see fn. 2 below).

With respect to question 19A the insured contends that it merely probes the state of mind of the applicant, and that if its responsible officers did not appreciate the significance of information in their possession, the incorrect or incomplete responses will not constitute grounds to avoid the insured's undertaking. (See *Thompson* v. *Occidental Life Ins. Co., supra,* 9 Cal.3d 904, 916; and *Russ-Field Corp.* v. *Underwriters at Lloyd's* (1958) 164 Cal.App.2d 83, 94-95 [330 P.2d 432].) It relies on the testimony of the officer who signed the application. He testified that he believed a "claim" was a legal action, that such complaints were common in the construction industry, but were not necessarily indicative that legal action would result. On the other hand, he testified it was unusual for the firm to receive a letter phrased as that

of the May 15th letter from the architect, and that such a letter would be referred to the firm's attorney. He further stated that he had not disclosed the problems with the College of Marin Library because, as he later told the broker, the firm had intended to handle the matter itself. The broker corroborated the latter statement and added that the officer stated he then was hopeful any liability would be less than the $5,000 deductible. The trial court was not required to accept the officer's testimony insofar as he attempted to state that he was not aware of any circumstances which might result in a claim. (See *Elfstrom* v. *New York Life Ins. Co.* (1967) 67 Cal.2d 503, 517 [63 Cal.Rptr. 35, 432 P.2d 731]; and cf. *Thompson* v. *Occidental Life Ins. Co., supra,* 9 Cal.3d 904, 919.)

The trial court further observed in its decision, "Williamson & Vollmer's failure to disclose this information constituted misrepresentation and concealment of material facts, whether the non-disclosure was intentional or unintentional." There is substantial evidence to sustain such a conclusion. As noted below (part III) the coverage of the policy extends to claims made and suits brought or commenced during the policy period, but distinguishes between a claim or suit predicated upon a negligent act, error or omission committed during the policy period, and one predicated on a negligent act, error or omission committed prior to the inception date of the policy.[2] It is important to determine whether

---

[2]The insuring agreement reads as follows:

"I. COVERAGE—PROFESSIONAL LIABILITY:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages by reason of liability arising out of any negligent act, error or omission in rendering or failing to render professional services of the type described in the declarations whether committed by the insured or any person employed by the insured or by others for whom the insured is legally responsible.

"II. POLICY PERIOD, TERRITORY:

"This insurance applies only to negligent acts, errors or omissions which are committed and result in damage solely within the territory of the Continental United States of America or Canada, and suit for which is commenced within the aforesaid territory, provided that the negligent act, error or omission:

"a) Was committed during the policy period and claim is made or suit is brought during the policy period.

"b) Was committed prior to the inception date of the policy, and claim is made during the policy period, or if suit is commenced during the policy period, provided:

"(1) the insured had no knowledge of any such prior negligent act, error or omission, on the effective date of this insurance, and

"(2) no other valid and collectible insurance is available to the insured for any such prior negligent act, error or omission.

"The term 'policy period' wherever used in this policy shall mean the period from the effective date of this policy to the expiration date or earlier termination date, if any, of this policy."

or not the insured had knowledge of any such prior negligent act, error or omission on the effective date of the insurance. The materiality is evident from the terms of the policy, and the fact the question was asked. (See *Thompson v. Occidental Life Ins. Co., supra,* 9 Cal.3d 904, 916; and *Burns v. Prudential Ins. Co., supra,* 201 Cal.App.2d 868, 871 and 875.) There is also other evidence which establishes the materiality of the information concealed and misrepresented by plaintiff.

The broker testified that he did not see the May 15, 1973, letter until 1974, and that if he had known about it he would have included a reference to the matter in the application. The plaintiff's complaint that it did not have the assistance of the broker when it caused the second application for insurance is of no weight when viewed in the light of the instructions in the broker's letter to plaintiff's officer that he should review it carefully.

An underwriter testified that if the true circumstances had been disclosed the policy would only have issued with an endorsement excluding liability for any services under the contract in question. That was in fact done with the project disclosed in the answer to question 19.

An experienced mechanical engineer testified that in his opinion the type of letter in question indicated problems out of which some sort of claim might arise, even if he thought it invalid, and that he would have brought the situation to the attention of his insurance broker, and answered question 19A in the affirmative.

In its closing brief plaintiff attacks the admission in evidence of the testimony of the underwriter and the engineer. An objection had been interposed to the former's testimony that an exclusionary endorsement would have been required if the true circumstances had been revealed. That objection, since it is predicated upon the theory that there was no "claim" to disclose, collapses with the trial court's finding that there was. Plaintiff impliedly concedes that the testimony might be admissible if it had been offered to secure reformation of the policy. (See *Cal.-West. States etc. Co. v. Feinsten, supra,* 15 Cal.2d 413, 424; and *Burns v. Prudential Ins. Co., supra,* 201 Cal.App.2d 868, 872-873.) As we note below the form of the remedy afforded the insurer is not limited in scope.

■ The engineer's testimony, as an expert, may be of questionable value in the field for which it was offered. In any event, his testimony was merely cumulative of what was indicated by the form of the application itself and the nature of the risks which the insurer proposed to assume.[3]

■ Insurance Code section 334 provides: "Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." (See *Thompson* v. *Occidental Life Ins. Co.*, *supra*, 9 Cal.3d 904, 916; *Cohen* v. *Penn Mut. Life Ins. Co.* (1957) 48 Cal.2d 720, 725-728 [312 P.2d 241]; *Ransom* v. *Penn Mutual Life Ins. Co.* (1954) 43 Cal.2d 420, 427 [274 P.2d 633]; *Rutherford* v. *Prudential Ins. Co.* (1965) 234 Cal.App.2d 719, 724-726 [44 Cal.Rptr. 697]; *Burns* v. *Prudential Ins. Co.*, *supra*, 201 Cal.App.2d 868, 871; and 12 Appleman, *op. cit.*, § 7273, p. 377 and § 7294, p. 398; and 7 Couch, *op. cit.*, § 35:45, p. 54.) The record here fails to disclose any evidence from which the trial court could conclude that the information withheld by the plaintiff was not material. "An insurance company is entitled to determine for itself what risks it will accept, and therefore to know all the facts relative to the applicant's physical condition. It has the unquestioned right to select those whom it will insure and to rely upon him who would be insured for such information as it desires as a basis for its determination to the end that a wise discrimination may be exercised in selecting its risks. [Citation.]" (*Robinson* v. *Occidental Life Ins. Co.* (1955) 131 Cal.App.2d 581, 586 [281 P.2d 39]. See also 27 Cal.Jur.2d, Insurance, § 267, pp. 757-758.) Any evidentiary errors cannot lessen the effectiveness of the trial court's implied finding as expressed in its decision.

## II

The decision recited: "The evidence establishes if Sequoia had known about the May 15th, 1973 letter at the time of the application the policy would have excluded, by endorsement, liability for any claim arising out of the library job. Williamson & Vollmer's misstatements in the application prevent the policy from applying to this risk, both with respect to the duty to defend and the duty to indemnify."

---

[3]Further objection to the testimony concerning the nature of the May 15th letter by an attorney who generally represented the insurer in claim matters is rendered irrelevant in the light of the conclusions to be drawn from the terms of the letter itself.

In reliance upon *De Campos* v. *State Comp. Ins. Fund* (1954) 122 Cal.App.2d 519 [265 P.2d 617] (see also 5A Corbin on Contracts (1964) Election of Remedies, §§ 1214-1227, p. 440 et seq.), plaintiff contends that the insurer on discovering the misrepresentation and concealment in the application was put to an election to rescind, or to affirm the contract and recover damages for fraud. (See 122 Cal.App.2d at p. 525; Ins. Code, § 359; and Civ. Code, § 1691.) It points out that the record reflects that the insurer elected to affirm the policy by its course of conduct. It retained, and never offered to return, the premium paid by plaintiff; it undertook the defense of claim made against the insured on another project, and demanded and received a certificate of deposit for the amount of the policy deductible; and, finally, it renewed the coverage of plaintiff for a further term. It concludes that the failure to rescind promptly (see Civ. Code, § 1691, subd. (a)) renders the insurer liable to defend and indemnify the insured on the claim in question.

This contention is based on an erroneous syllogism. Insurance Code section 449 provides: "A breach of warranty without fraud merely exonerates an insurer from the time that it occurs, or where the warranty is broken in its inception, prevents the policy from attaching to the risk." (See *De Campos* v. *State Comp. Ins. Fund, supra,* 122 Cal.App.2d 519, 530.) Plaintiff therefore assumes that if there is no breach of warranty, the policy does attach to the risk, and rescission is the sole remedy of the insurer where misrepresentation or concealment, rather than breach of warranty, is involved. It has gone to great pains to demonstrate that there was no breach of warranty in this case. The insurer properly points out that regardless of whether there was a breach of warranty, rescission is not the sole remedy for the concealment and misrepresentation in this case. In fact the court, in the case relied upon by plaintiff, expressly noted, "This specification in the Insurance Code of circumstances under which a party to an insurance contract may rescind does not mean that rescission in any such case is the exclusive remedy. These provisions of the Insurance Code are in the nature of special provisions pertaining to insurance contracts, which are superimposed upon those provisions of law which govern contracts generally. . . . [¶] It seems clear, therefore, that the rights of rescission which the Insurance Code recognizes and limits are not in derogation of other remedial rights which are recognized and implemented by other provisions of law, . . ." (*De Campos* v. *State Comp. Ins. Fund, supra,* 122 Cal.App.2d 519, 529.)

The issues here were framed by the plaintiff's complaint for declaratory relief to establish its right to indemnity and defense for a particular claim. The insurer was then entitled to make its defense. ■ "Rescission is not the exclusive remedy of one who has become entitled to avoid a contract by reason of acts or omissions of the other party to it which are fraudulent in their nature. He may cancel the contract by its rescission; or he may seek affirmative relief in a court of equity for any injury sustained by the wrongful act or omission of the other; or he may set up the fraud by way of defense to an action brought to enforce the apparent liability. [Citations.]" (*California Co.* v. *New Zealand Ins. Co.* (1913) 23 Cal.App. 611, 615; approved *General Acc. etc. Corp.* v. *Indus. Acc. Com.* (1925) 196 Cal. 179, 189 [237 P. 33].) In its answer the insurer asserted that the architect's claim was not covered by the policy, for the following reasons: ". . . that the claim which is the subject of the aforementioned cross-complaint was made prior to the inception date of said policy of insurance, and the further fact that plaintiff misrepresented the true facts in its application for said policy of insurance in stating that it was unaware of any circumstances which might result in any claim against it, and the further fact that plaintiff had knowledge of the alleged negligent act, error or omission prior to the effective date of said policy of insurance." It further advanced those facts as separate affirmative defenses.

The court properly phrased its judgment with respect to the relief sought. In support of the judgment we deem that the court has in effect reformed the policy. It also may be said that it has interpreted the policy in a manner which would avoid circuity of action with respect to the plaintiff's claim for indemnity and defense. The damages to which plaintiff concedes the insurer would be entitled would equate with that which the plaintiff seeks.

There is no merit in plaintiff's contention that the court has granted inappropriate relief.

### III

The trial court in its memorandum decision found that the insurer had neither a duty to defend nor to indemnify.

Examination of the insuring clauses (fn. 2 above) reflects that the insurer is not to be liable for a claim made or a suit commenced during the policy period when the negligent act, error or omission was committed prior to the inception date of the policy and the insured had knowledge of such prior negligent act, error or omission on the effective date of the policy.

In reliance upon *Gray* v. *Zurich Ins. Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], plaintiff attempts to show that the insurer had a duty to defend it, at least until such time as the architect established that there was some negligent act, error or omission in the professional services rendered by the engineering firm. In the *Gray* case it could not be determined whether or not the insurer was liable to indemnify the insured until the question of whether the insured had committed an intentional assault (indemnity for which was excluded by the terms of the policy) in the pending action. (See 65 Cal.2d at pp. 271-272.) ■ In this case, on the other hand, the evidence supported and the trial court adhered to, the insurer's contention that the entire occurrence was one to which the policy should not apply, because if the truth had been revealed the project would have been expressly excluded from coverage, and that there was no duty to either defend or indemnify or both. The issue of the insured's knowledge of the circumstances giving rise to the claim was a matter entirely extrinsic to the matters to be determined in the action between the architect and the engineering firm, and did not depend on the resolution of that action for a solution.

The fact that the engineering firm performed a small amount of work on the College of Marin Library after the issuance of the policy on August 10, 1973, does not avail it. There is no showing that that work, as distinguished from the work performed prior to May 15, 1973, had any relationship to the claim asserted in the architect's cross-complaint.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 22, 1976.