**CITY OF MARION, Iowa, Appellee,**

v.

**NATIONAL CASUALTY COMPANY, Appellant,**

**and**

**Vanguard Insurance Company and Great Southwest Fire Insurance Company, Defendants.**

No. 87–734.

Supreme Court of Iowa.

Nov. 23, 1988.

David A. Elderkin, David L. Baker, and Edward M. Blando of Elderkin, Pirnie, Von Lackum & Elderkin, Cedar Rapids, for appellant.

Robert M. Jilek and Matthew J. Petrzelka of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

Defendant, National Casualty Company, appeals the judgment in favor of its insured, the City of Marion, Iowa in the amount of $33,244.06. National Casualty asserts the district court erred (1) by applying the wrong definition of "claim" when finding coverage under the city's "claims made" liability policy for its public officials, and (2) in its computation of the amount of the judgment. We reverse and remand.

I

In 1987, a dispute regarding voluntary security work by uniformed off-duty officers arose between the command staff of the city's police department and the Marion Policemen's Protective Association (MPPA), the exclusive bargaining representative for the city's police officers. When this problem proved insoluble, the MPPA members refused to volunteer for any of these extra work assignments. In July 1981, the Marion Chamber of Commerce sought additional police security for an event it was sponsoring called "Fair on the Square." Officer Michael de La Mater, the acting president of the MPPA, requested that the union's members not accept this off-duty work. The police department then contacted the Cedar Rapids Veterans of Public Safety (VPS) to obtain sufficient security for the Chamber's event. Initially the VPS agreed to provide security; however, it reconsidered and declined the work after being contacted by de La Mater and Officer James Weitenhagen, the acting vice-president of the MPPA.

At this point, the Chamber filed a complaint with the police department. An internal investigation, which consisted of two meetings, followed. At both meetings, Weitenhagen's request that a union representative be present was denied. Weitenhagen therefore refused to answer any questions and was consequently fired on August 5, 1981. On January 7, 1982, de La Mater was suspended as a result of his participation in these events. Both officers appealed these actions to the Marion Civil Service Commission.

During the appeals process, the officers and the city entered into a series of agreements regarding the statute of limitations for the officers' claims against the city. In an agreement signed by the city's mayor on January 2, 1982, and by Weitenhagen on February 4, the city agreed to waive until August 5, 1983, any statute of limitations defense it had to a cause of action by Weitenhagen. In consideration for this agreement, Weitenhagen agreed to postpone filing a lawsuit. Officer de La Mater entered into a similar agreement with the city on June 17, 1982. The parties thereafter entered into a series of nearly identical agreements throughout 1983 and 1984, which extended the time for the officers to bring suit into 1985.

In addition to these agreements, the parties repeatedly exchanged settlement proposals from 1981 to 1984. For example, in December 1981, Weitenhagen offered to drop his claim against the city in exchange for his full reinstatement as a police officer. More significantly, on February 14, 1983, the officers' attorney wrote the city's attorney, conveying an offer to settle the disputes on the following grounds:

1. Officers DeLaMater and Weitenhagen will not file any lawsuits against the City of Marion, or any of its officials. They will sign releases to that effect. They will also agree to nullification of the agreements to extend the statute of limitations, copies of which are attached hereto. The officers will therefore give up their claims for all the personal anxiety and most of their own time expended in the prolonged controversy.

2. Officer Weitenhagen will be restored to his full former position just as Judge Ead's decision requires, and he will receive all seniority rights, back pay and wages.

3. Job Services will be advised of the payment of three month's back salary and Officer Weitenhagen will work out a reimbursement plan satisfactory to Job Services.

4. Both Officers DeLaMater and Weitenhagen will each be paid *one* week's salary at the gross amount of $320.00 each, as a reimbursement for a small part of their time lost due to the necessity that they be present at the three-week trial in District Court.

5. The City of Marion will pay $19,-000.00 to Officers Weitenhagen and De-LaMater as a partial reimbursement for their attorney fees which were directly necessitated by this controversy.

6. Officers DeLaMater and Weitenhagen will join a joint press release which will in essence state that all matters of controversy between the officers and the City have been amicably resolved.

7. The City of Marion will reimburse the Marion Police Protective Association the sum of $3,747.00, which has been expended for their representative in handling the PPCs related to discipline and extra work.

8. The City of Marion will concede the issues in the disciplinary PPC which has not yet been heard by the PERB hearing officer.

9. The City will not appeal the adverse Eads decision, the adverse PERB decision on extra work, the adverse PERB decision of the Weitenhagen/Dolley harassment PPC, or the adverse Weitenhagen/Job Services decision.

10. The personnel files of the individual officers will not have to be altered in any way, except that a copy of all the decisions relating to this controversy be included, as well as a copy of the settlement agreement and the press release.

Unfortunately, despite the exchange of numerous offers, the parties were unable to reach a settlement.

In the meantime, the appeals process steadily continued. In 1982, the Marion Civil Service Commission reduced Weitenhagen's discharge to a ninety-day suspension and reversed de La Mater's suspension. The city then appealed to the district court, which affirmed the commission's ruling regarding de La Mater, but vacated Weitenhagen's suspension and ordered him reinstated. The city again appealed and we transferred the case to the court of appeals. The court of appeals affirmed the district court on November 20, 1984, and

we denied further review on January 30, 1985.

The officers shortly thereafter presented the city with a proposed complaint they were prepared to file in federal court against the city if their claims were not settled. This complaint was ultimately filed on July 11, 1985. In September 1985, the city settled with the officers for $60,-000 and the costs of the action. In the course of the litigation, the city incurred $6744.06 in attorney fees to defend itself.

The city then brought this action against National Casualty, Vanguard Insurance Company, and Great Southwest Fire Insurance Company. Claims made liability policies were signed with these companies from August 1981 to December 1985. Vanguard and Great Southwest settled with the city, Vanguard paying $9000 and Great Southwest paying $7500. Another insurer, Iowa National Mutual Insurance Company, which was not named as a party, paid $15,-000. The case proceeded to trial to the court against National Casualty only.

The involvement of National Casualty in this case began in 1984. On October 10, 1984, the city requested a claims made liability policy for its public officials from Markel Service, Inc., an agent of National Casualty. As a part of this request, the city was asked whether "any claim [had] been made or [was then] pending against any person in his/her capacity as an official or employee" of the city. The city responded in the affirmative and attached the following explanation for its answer:

> Two cases of threatened litigation exist between the City and two police officers, Michael DeLaMater and James Weitenhagen, surrounding disciplinary actions taken against each officer. Judicial review of the actual discipline currently in Iowa Appeals Court awaiting decision.

National Casualty then issued the policy for the period from December 15, 1984, to December 15, 1985. The policy provided in pertinent part:

> The Company will pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as damages as a result of *claims first made during the period of this policy,* against the INSURED by reason of any WRONGFUL ACT, rendered in the discharge of PUBLIC ENTITY duties.

[Emphasis added.]

The policy did not, however, provide a definition for the phrase "claims first made."

The district court concluded the officers' claims against the city had been first made within the period of the city's policy with National Casualty. Additionally, the court noted the city also relied on theories of equitable estoppel, waiver, and reasonable expectations.

II

National Casualty contends the district court erred by applying the wrong definition of "claim" or "claims first made," despite the court's statement of the correct definition. The city asserts the court utilized the correct definition and that substantial evidence supports the court's finding of coverage.

In the context of a claims made policy, "claim" has been defined as follows:

> In its ordinary sense the term imports the assertion, demand or challenge of something as a right; the assertion of a liability to the party making it to do some service or pay a sum of money.... A claim connotes an assertion of a legal right, as distinguished from a recognition of that right.

*Williamson & Vollmer Eng'g, Inc. v. Sequoia Ins. Co.,* 64 Cal.App.3d 261, 269, 134 Cal.Rptr. 427, 431 (1976); *see also, Patterson v. Carr,* 189 Iowa 69, 71, 176 N.W. 265, 266 (1920) (wherein this court defined "claim" in a probate context as "[a] demand of a right or supposed right; a calling on another for something due or supposed to be due; an assertion of a right or fact"). A claims made policy has been described as one "wherein the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term." *Gulf Ins. Co. v. Dolan, Fertig and Curtis,* 433 So.2d 512, 514 (Fla.1983) (quoting 7A Appleman, *Insurance Law and Practice* 312

(1979)). *See also Brander v. Nabors,* 443 F.Supp. 764, 767 (N.D.Miss.1978); *Graman v. Continental Casualty Co.,* 87 Ill.App.3d 896, 899, 42 Ill.Dec. 772, 775, 409 N.E.2d 387, 390 (1980).

The district court, quoting from Webster's Third International Dictionary, noted that " '[c]laim' has been defined as 'an authoritative or challenging request, a demand of a right or supposed right, or a calling on another for something due or supposed to be due.' " This definition is essentially identical to that given in *Williamson,* which was advocated by National Casualty and quoted by us above. We believe this definition and that given in *Williamson* are correct. In applying its definition, however, the district court appears to have added a requirement that the "claim" must be legally recognized before it will be considered a claim under a claims made policy. The court stated National Casualty had not made clear

> how any threatened lawsuit or how any discussions in respect to a lawsuit or what conferences that might have taken place in respect to proposed settlement of possible claims as well as the disciplinary matter could ripen into claims prior to a final court decision [regarding the discipline of the officers].

In the court's view, "the officers would have had no claim if the City had been successful in its efforts to obtain a Court decision justifying the disciplinary punishment imposed." The district court believed the officers' success in that litigation was the basis for their claims against the city, so that those claims were merely "possible" or "potential" until that success was finally determined on appeal. Accordingly, the court found the officers' claims were first made when the city was presented in February 1985 with the proposed complaint the officers intended to file in federal district court. This occurred shortly after we denied further review of the court of appeals' decision adverse to the city regarding the discipline of the officers.

We cannot agree the officers' repeated settlement offers and other assertions of their rights against the city could not "ripen into claims" prior to final appellate resolution of the disciplinary litigation. Such a conclusion does not comport with the definition of a "claim" under a claims made policy, particularly under the record in this case. As noted above, a "claim connotes an assertion of a legal right, as distinguished from a recognition of that right." *Williamson,* 64 Cal.App.3d at 269, 134 Cal. Rptr. at 431. The parties' repeated agreements to postpone the filing of the officers' lawsuit and the numerous settlement offers exchanged by the parties constitute overwhelming evidence the officers had made a claim against the city prior to the inception of the city's policy with National Casualty. The district court erred by ruling otherwise.

### III

The city contends the district court's mention of its theories of equitable estoppel, waiver, and reasonable expectations provides an alternative basis for the judgment against National Casualty. The court stated that "[s]ome of these theories may very well have favorable application as far as the Plaintiff is concerned in this case (particularly the theory of equitable estoppel)."

We remain committed to the view that an appellee who prevailed as the result of improper legal conclusions of the district court, as here, may seek affirmance of the judgment based on the validity of other legally valid grounds which were presented to that court. *Greene v. Friend of the Court,* 406 N.W.2d 433, 435 (Iowa 1987); *see also, Citizens Against the Lewis and Clark (Mowery) Landfill v. Pottawattamie County Bd. of Adjustment,* 277 N.W. 2d 921, 926 (Iowa 1979). *But see Fjelland v. Wemhoff,* 249 N.W.2d 634, 638 (Iowa 1977) (appellee did not ask the trial court to enlarge its findings and rule upon other bases for recovery). However, our review of the record in this case persuades us the city failed to introduce sufficient evidence to prove any of its alternate theories.

Under this disposition of the case, we need not determine whether the district court properly computed the amount of the

judgment against National Casualty. We reverse the judgment in favor of the city and remand for entry of judgment in favor of National Casualty.

REVERSED AND REMANDED.