2006-NMCA-118

143 P.3d 196

**CITY OF SANTA ROSA,
Plaintiff–Appellant,**

v.

**TWIN CITY FIRE INSURANCE COMPANY, Teeter Insurance Agency, Inc., and Mike Teeter, Defendants–Appellees.**

**No. 25,126.**

Court of Appeals of New Mexico.

Aug. 8, 2006.

The Romero Law Firm, P.A., Dave Romero, Jr., Las Vegas, NM, for Appellant.

Riley, Shane & Hale, P.A., Mark J. Riley, Susan R. Johnson, Albuquerque, NM, for Appellee Twin City Fire Insurance Co.

## OPINION

FRY, Judge.

{1} In this insurance case, we consider whether the filing of a discrimination charge with state and federal agencies constitutes a "claim" under a type of insurance policy known as a "claims made" policy. The City of Santa Rosa contends that its eventual monetary settlement with a terminated worker (Worker) over allegations of racial discrimination should be covered by a Twin City Fire Insurance (Twin City) policy. Because we conclude that the policy contains clear and unambiguous language, our duty is to enforce that language as written as an expression of the intent of the parties. *Battishill v. Farmers Alliance Ins. Co.*, 2006–NMSC–004, ¶ 20, 139 N.M. 24, 127 P.3d 1111. Enforcing the plain language of the policy, we conclude that coverage was provided only for a demand "for damages" first made during the policy period and that an administrative grievance such as the one at issue here is not a demand for damages as those terms are defined in the policy. Therefore, we affirm the district court's grant of summary judgment in favor of Twin City.

## BACKGROUND

{2} The City terminated Worker's employment on February 7, 1995. Worker then filed a joint charge of discrimination with the federal Equal Employment Opportunity Commission (EEOC) and the New Mexico Human Rights Division (NMHRD) alleging that his termination was "because of my race." The City received a "Notice of Charge of Discrimination" from the EEOC in March 1995, in which the EEOC requested a response from the City.

{3} The City had in force a public officials errors and omissions liability policy with Twin City, and this policy was effective from January 27, 1995, to January 27, 1996. This policy was a "claims made" policy, meaning that it covered any claims "for damages" first made against the City during the policy period. In contrast, an occurrence insurance policy generally covers an error or omission regardless of when the claim is made. *See St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 535 n. 3, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978); *Cont'l Cas. Co. v. Maxwell*, 799 S.W.2d 882, 886 (Mo.Ct.App.1990). Claims made policies often have lower premiums than occurrence policies because the insurer is exposed to a more limited and ascertainable risk. *See Am. Cas. Co. of Reading, Pa. v. FDIC*, 821 F.Supp. 655, 663 (W.D.Okla.1993), *aff'd*, 33 F.3d 62 (10th Cir. 1994) (order and judgment).

{4} After the City received the "Notice of Charge of Discrimination" from the EEOC, the City's attorney then notified Twin City's local insurance agent and that agent then notified Twin City in April 1995 about the notice. Less than a month later, Twin City advised the City that coverage under the policy "ha[d] not been triggered" because Worker had "not made a monetary prayer for relief in his EEOC complaint" and asked to be kept informed of the situation. The City or the local insurance agent repeatedly requested both coverage and a defense from Twin City, which it declined to provide under the policy.

{5} The City did not renew its policy with Twin City after the policy expired on January 27, 1996. Ultimately, in 1997 Worker filed a lawsuit in federal district court against the City, which was settled. The City then filed suit against Twin City claiming a breach of the insurance contract due to Twin City's failure to provide a defense and pay damages for the settlement. The district court granted Twin City's motion for summary judgment on the ground that there was no coverage under the policy because Insurer "did not receive a claim for damages" from the City within the policy period. The City appeals from this ruling.

## DISCUSSION

█ {6} The question of whether a charge of discrimination filed with the EEOC or NMHRD constitutes a "claim" within the meaning of a claims made insurance policy is a novel question in New Mexico. We begin with a review of the general rules regarding insurance policy interpretation and then examine the express terms of the Twin City policy to determine whether coverage existed. The City notes that examination of the language in any given policy is crucial to the resolution of whether any particular action constitutes a "claim" within the meaning of that policy. We agree and conclude that the express terms of the policy provide a straightforward resolution to this case.

█ {7} We review the interpretation of an insurance policy de novo. *Battishill*, 2006–NMSC–004, ¶ 6. "When the terms used have a common and ordinary meaning, that meaning controls in determining the intent of the parties." *Id.* ¶ 13. Insurance contracts are not interpreted based on a subjective view of the coverage, but on "the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured." *Id.* (internal quotation marks and citation omitted). In determining whether an insurance policy provision is ambiguous, we consider whether the language "is susceptible to more than one meaning, [whether] the structure of the contract is illogical, [and whether] a particular matter of coverage is not explicitly addressed by the policy." *Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 19, 123 N.M. 752, 945 P.2d 970. We will not create ambiguity where none exists, and an ambiguity does not exist merely because the parties hold competing interpretations. *Battishill*, 2006–NMSC–004, ¶ 17. When a policy contains clear and unambiguous language, the duty of the reviewing court is to enforce that language as written as an expression of the intent of the parties. *See id.* ¶ 20.

{8} The policy that the City purchased is clearly and repeatedly marked as a "claims made" policy. It includes the following provisions, which are central to our analysis:

THIS IS A "CLAIMS MADE" POLICY.... YOUR POLICY APPLIES ONLY

TO CLAIMS MADE AGAINST THE IN-SURED AFTER THE INCEPTION DATE AND BEFORE THE END OF THE POLICY PERIOD.

. . . .

SECTION I—COVERAGE

**A. Insuring Agreement**

**We** will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as **damages** because of **errors or omissions injury** to which this policy applies.

. . . .

SECTION II—DEFINITIONS

. . . .

**"Claim"** means a demand received by any insured for **damages** alleging injury or damage to persons or property, including the institution of a **suit** for such damages against any insured.

. . . .

**"Damages"** means monetary judgment, award or settlement but does not include fines or penalties or **damages** for which insurance is prohibited by law applicable to the construction of this policy.

. . . .

**"Suit"** means a civil proceeding in which **damages** because of **errors or omissions injury** to which this insurance applies are alleged. **Suit** includes an arbitration proceeding in which such **damages** are alleged and to which an insured submits.

. . . .

SECTION III—APPLICATION OF POLICY

1. **Your** policy applies to **errors or omissions injury** only if:

   a. A **claim** for **damages** because of the **errors or omissions injury** is first made against any insured during the **policy period**[.]

{9} The policy also defines "errors and omissions injury" to include injury arising from employment "[d]iscrimination, not committed by or at the insured's direction." Thus, the question presented is whether Worker's charge with the EEOC and the NMHRD is properly construed as a "claim for damages" as defined in the policy.

{10} Because a "claim" must be a "demand received by any insured for damages," we must decide whether Worker's charge of discrimination was a "demand" and whether it was a "demand for damages." The City emphasizes that the complaint Worker filed with the EEOC is titled a "charge" and that it has "the form and intent" similar to a lawsuit; it was signed, it imposed upon the City a deadline to respond, and the filing of such a charge is a required step before one may file a Title VII lawsuit. Twin City, on the other hand, focuses on the language of the policy and claims that the EEOC and NMHRD grievances are not claims for monetary relief and that the first demand for "damages" by Worker as defined in the policy occurred when Worker filed a federal lawsuit twenty-two months after the policy had expired.

{11} We agree with Twin City. First, we are not persuaded that the mere filing of the grievance with the EEOC and NMHRD was a demand because it was unaccompanied by any request for relief, such as an actual demand for reinstatement or compensation. We are not persuaded by the City's characterization of the administrative charge as "an affirmative legal action against the City." The City was faced with a request for information in the context of an administrative grievance, and not a specific demand for damages or reinstatement. *See Mitchell–Carr v. McLendon,* 1999–NMSC–025, ¶¶ 7, 10, 127 N.M. 282, 980 P.2d 65 (describing actions before the NMHRD as an "administrative" or "grievance" procedure). *See also* NMSA 1978, § 28–1–10 (1969, as amended through 2005) (describing as a "grievance procedure" the process of filing a complaint with NMHRD). The City presented an affidavit from Worker's attorney in which that attorney asserted that the EEOC "does not include nor require a specific claim for monetary damages in the Charge of Discrimination" and that Worker's intent in filing the EEOC charge and later lawsuit was "to seek any and all damages and remedies against the City." We do not question the truth of these assertions, but they do not alter the definition of "damages" in the policy; Worker's subjective intent does not change the

fact that, at the time of the EEOC notice, the City was facing a request for information from the EEOC and nothing more.

{12} Similarly, we cannot see how the grievance with the administrative bodies is a demand for "damages" as that term is defined because, again, the City was not being pressed for a "monetary judgment, award or settlement." The notice from the EEOC is simply not a request for any of these forms of damages. The definition of claim in the policy appears to include more than just the formal commencement of a lawsuit because it is a "demand ... for **damages** ... including the institution of a **suit**." Whatever actions short of a lawsuit might constitute a claim for damages, we need not explore because Worker's actions here clearly did not rise to the level of a demand for damages as the term "damages" is defined. At the time of the notice from the EEOC, Worker was effectively asking administrative bodies to conduct an investigation and conciliation of the issue.

{13} Worker's charges with the EEOC and NMHRD certainly would have provided the City with notice that a claim for damages could arise in the future if informal dispute resolution failed, but, standing alone, the charge and subsequent administrative requests were not a present demand for damages. We agree with the City that the Human Rights Commission has the power to eventually award a complainant damages. NMSA 1978, § 28–1–11(E) (1969, as amended through 1995) (stating that if a panel of the Commission, upon reviewing a hearing officer's findings, concludes that a party has engaged in a discriminatory practice, it "may require the respondent to pay actual damages to the complainant"). However, while this eventuality is foreseeable and possible, it is certainly not preordained from the simple filing of a charge.

{14} For example, in order for the commission to order a monetary award, (1) the director of the NMHRD would have to find probable cause to believe that discrimination has taken place, (2) attempts at confidential conciliation would have to fail or be deemed futile by the director, and (3) a hearing officer would have to find for the complainant after a formal hearing. § 28–1–10(C) (stat-ing that "[i]f the director determines that probable cause exists for the complaint, the director shall attempt to achieve a satisfactory adjustment of the complaint through persuasion and conciliation"); § 28–1–10(F) (providing that the commission may file a complaint if conciliation fails "or if, in the opinion of the director, informal conference cannot result in conciliation"); § 28–1–11(E) (stating that commission may order the payment of damages after review of hearing officer's report). *See also* 9.1.1.10(D) NMAC (1998) (stating that the director sets the matter for a hearing, and that such occurs after conciliation has failed). A complainant may file suit in district court in lieu of a hearing before the commission, but only after the NMHRD director finds probable cause. § 28–1–10(J); 9.1.1.11(A)(1) NMAC (1998). In addition, the EEOC only attempts conciliation or, failing acceptable conciliation, may bring a civil action in court, but it has no independent power to award monetary damages. 42 U.S.C. § 2000e–5(b), (f)(1) (2000). *See* Wayne E. Borgeest, Anthony J. Fowler, Michael M. Santocki, *Employment Law Claims: Triggering Coverage Under "Claims Made" Policies,* 18 W. New Eng. L.Rev. 179, 181 (1996) (describing the EEOC as an agency with "powers of conciliation only"). We agree with the City that an EEOC complaint is a prerequisite to the granting of a notice of a right to sue from the EEOC and that such notice is necessary in order to file a Title VII lawsuit for employment discrimination. 42 U.S.C. § 2000e–5(f)(1) (stating that an aggrieved party has ninety days to file a civil action after being informed that the government is not taking action on the matter itself). But this does not mean that a grievance equates to such a lawsuit. These observations all support our conclusion that when the City received notice that Worker had filed charges of discrimination, that notice constitutes neither an actual "suit" nor a "demand for damages" within the meaning of the policy.

{15} The City contends that the policy's terms are ambiguous because the parties have opposite interpretations of the same language. That contention has been rejected by our Supreme Court. *Battishill,* 2006–NMSC–004, ¶ 17. We find no ambiguity in the language used in these circumstances,

and thus we do not apply the rule that when faced with an ambiguity in coverage a policy should be construed in favor of the insured. *Id.*

{16} The City also points to the "lengthy" exclusion section in the policy and claims that the failure to exlcude EEOC or administrative actions implies coverage. We disagree because the absence of an exclusion does not confer coverage that does not already exist. *Davis v. Farmers Ins. Co. of Arizona,* 2006–NMCA–099, ¶ 26, 140 N.M. 249, 142 P.3d 17.

{17} Finally, the City relies on a Michigan case where complaints to the EEOC and a state civil rights agency were held to constitute a claim under a claims made policy. *Pinckney Cmty. Schs. v. Cont'l Cas. Co.,* 213 Mich.App. 521, 540 N.W.2d 748, 752 (1995). However, in that case, the term "claim" was not defined in the policy; thus, the court looked at the commonly used meaning of the term, including dictionary definitions and the reasonable expectations of the parties. *Id.* at 751–52. In the present case, the term "claim" is defined within the policy and incorporates the term "damages," which is likewise given a specific definition. Thus, *Pinckney* is inapposite. So too are myriad cases in which courts have interpreted the meaning of the term "claim" when it is left undefined in a policy. *Bensalem Twp. v. W. World Ins. Co.,* 609 F.Supp. 1343, 1347–49 (E.D.Pa.1985) (holding that notice from the EEOC that a charge of discrimination had been filed was not a claim because it was not a demand for relief based on a legal right, where claim was undefined in the policy); *Abifadel v. Cigna Ins. Co.,* 8 Cal.App.4th 145, 9 Cal.Rptr.2d 910, 920–22 (1992) (evaluating whether a variety of communications and regulatory actions constituted claims where the policy did not define the term); *Nat'l Cas. Co. v. Great Sw. Fire Ins. Co.,* 833 P.2d 741, 744–45 (Colo. 1992) (holding that, where the term was undefined, a demand for reinstatement after a wrongful termination was a claim); *City of Marion v. Nat'l Cas. Co.,* 431 N.W.2d 370, 373–74 (Iowa 1988) (applying dictionary definitions to term claim when it was undefined in the policy). *See also Borgeest, supra* at 182–87 (describing how courts, in evaluating whether a claim has been made, have focused on whether an agency possesses coercive authority where the policy is silent on what constitutes a claim). Also inapposite are those cases in which the policy definitions of a "claim" included administrative proceedings because the policy in this case does not have such a definition. *See Cornett Mgmt. Co. v. Lexington Ins. Co.,* 2006 WL 898109, *6 (N.D.W.Va.2006) (considering claims made policy that defined a claim to include "an administrative proceeding"); *Lodgenet Entm't. Corp. v. Am. Int'l Specialty Lines Ins. Co.,* 299 F.Supp.2d 987, 991 (D.S.D.2003) (examining a claims made policy which defined claim as including an EEOC or similar agency "proceeding or investigation commenced by the filing of a notice of charges"); *Specialty Food Sys., Inc. v. Reliance Ins. Co. of Ill.,* 45 F.Supp.2d 541, 543–44 (E.D.La. 1999) (concluding that a charge of discrimination with the EEOC constituted a claim when the definition of claim included notice from "any administrative agency advising that it is the intention of a person to hold the [i]nsured responsible" for a wrongful employment practice (internal quotation marks and citation omitted)), *aff'd,* 200 F.3d 816 (5th Cir. 1999).

{18} We emphasize that the policy language resolves the question in this case, and we express no opinion about whether an EEOC or NMHRD charge of discrimination would constitute a claim where that term is left undefined in a policy or is defined differently. *See City of Sunland Park v. Harris News, Inc.,* 2005–NMCA–128, ¶ 50, 138 N.M. 588, 124 P.3d 566 (noting that this Court does not issue advisory opinions on hypothetical questions), *cert. granted,* 2005–NMCERT– 011, 138 N.M. 587, 124 P.3d 565. Twin City owed no coverage to the City because the City had not received a claim for damages during the policy period.

## CONCLUSION

{19} The district court's summary judgment in favor of Twin City is affirmed.

{20} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and IRA ROBINSON, Judges.