**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 25, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TAOS SKI VALLEY, INC.,

    Plaintiff - Appellant,

v.

NOVA CASUALTY COMPANY,

    Defendant - Appellee.

No. 16-2118
(D.C. No. 1:15-CV-00323-MCA-SCY)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

In October 2013, Taos Ski Valley, Inc. (TSV) discovered that an oil-and-water separator on its federally leased property had released hydrocarbon contaminants into the soil at the company's ski resort in New Mexico. To abate the contamination and to protect nearby ground and surface water, TSV spent over a million dollars remediating the site. TSV had a commercial general-liability insurance policy with the Nova Casualty Company (Nova) and sought indemnification for its clean-up expenses. When Nova denied coverage under the insurance policy's owned-property exclusion (the Owned-Property Exclusion), TSV sued for declaratory relief in federal court in the District of New Mexico. But the district court granted Nova's Motion to

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Dismiss and later denied TSV's Motion for Reconsideration. TSV appealed. We affirm.[1]

I

When TSV's environmental contractor first discovered the contamination, he collected a series of soil and water samples for scientific analysis. Tests of the samples revealed that diesel and petroleum levels exceeded permissible levels under New Mexico environmental regulations. Apart from these violations, the contamination posed risks to the nearby Rio Honda, a body of surface water regulated by the federal Clean Water Act, and to the aquifer beneath the contamination. TSV claims that the regulatory violations subjected it to immediate third-party liability to state and federal environmental authorities.[2]

TSV's ski resort operates on federal land under a special-use permit from the U.S. Department of Agriculture. The permit requires TSV to pay the "full cost of any

---

[1] Because this case is before us based on diversity jurisdiction, *see* 28 U.S.C. § 1332, and because no New Mexico court has addressed the applicability of the Owned-Property Exclusion in similar circumstances as here, we must try to determine what the Supreme Court of New Mexico would decide. *See Pehle v. Farm Bureau Life Ins. Co., Inc.*, 397 F. 3d 897, 901-02 (10th Cir. 2005). In doing so, we may consider all available resources, including decisions of the New Mexico courts, other state and federal courts, and the general trend of authority. *See Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1228 (10th Cir. 2001) (internal quotation marks omitted).

[2] When we use the term "third-party liability" to discuss TSV's arguments, we use it in the sense TSV uses it—as referring to the regulatory fines and penalties TSV may have had to pay to government authorities had it not remediated its contaminated soil, and to the clean-up costs it did incur. Because Nova has not contested that such fines and costs are within the insuring clause, we move directly to the Policy's Owned-Property Exclusion, taking no position on whether the insuring clause would provide coverage for such fines and costs.

damage" caused by its own "negligence or activities." R. vol. 1 at 8. TSV notified the relevant state and federal authorities of the contamination and "coordinated and implemented necessary corrective measures" to abate the contamination and protect the threatened water resources. Appellant Opening Br. at 9. TSV's remediation program succeeded, and the company even received federal commendation for its diligent clean-up efforts.

Before TSV started its remediation, it notified Nova (through Nova's designated agent, Safehold Special Risk) of the contamination and the environmental harm. TSV requested that Nova acknowledge its responsibility under its insurance policy to indemnify TSV for the cost of the clean-up. The policy at issue (the Policy) was effective from November 1, 2013 to November 1, 2014.[3] The Policy's insuring clause states that Nova "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." R. vol. 5 at 173. It goes on to state that Nova "will have no duty to defend the insured against any 'suit' seeking damages for . . . 'property damage' to which this insurance does not apply." *Id*.

In October 2014, Nova notified TSV that it was denying TSV insurance coverage for the clean-up costs. As support for its denial, Nova cited the Owned-Property Exclusion located in Section 2(j)(1) of the Policy, which excluded coverage for damage to "Property you own, rent, or occupy, including any costs or expenses

_____

[3] From November 2009 to November 2014, TSV had five substantively identical, one-year policies with Nova.

incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property . . . ." *Id.* at 176.[4]

TSV and Nova then traded several volleys of letters and legal opinions about the Owned-Property Exclusion. TSV alleged that the Owned-Property Exclusion was inapplicable because TSV was seeking indemnification for its costs in abating third-party public and environmental injuries rather than first-party injury to its own property. In March 2015, Nova again denied coverage.

In April 2015, TSV sued Nova for declaratory relief in federal court in the District of New Mexico. Nova filed a Motion to Dismiss, relying on the Owned-Property Exclusion. TSV then filed a Motion for Certification of Question of State Law to the New Mexico Supreme Court, arguing that state-court guidance was needed to decide this issue of first impression under New Mexico law.[5] The district court never ruled on the motion, instead simply deciding the case.

In December 2015, the district court granted Nova's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court concluded that the broad language in Nova's Owned-Property Exclusion distinguished it from the narrower

---

[4] Nova also reserved the right to deny coverage based on the Policy's limited pollution-liability exclusion, but did not litigate that exclusion's applicability.

[5] TSV now asks us to certify the disputed coverage question to the New Mexico Supreme Court. We decline to do so. *See Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) ("When we see a reasonably clear and principled course, we will seek to follow it ourselves."); *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) ("Certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law.").

4

language in the owned-property exclusions at issue in TSV's cited cases. The district court concluded that the broader language "render[ed] [TSV's] reading of [the] policy unreasonable." R. vol. 6 at 237.

Alternatively, TSV argued that the district court should not enforce the Owned-Property Exclusion, asserting that the exclusion violates New Mexico public policy. In TSV's view, a court's enforcing the exclusion (if interpreted as the district court did) would lead insureds to delay clean-ups until after environmental contamination damaged neighboring property or water. The district court rejected this argument, based partly on its view that insureds opting for delay would make themselves vulnerable to the policy exclusion for damage "expected or intended from the standpoint of the insured." R. vol. 5 at 174. TSV moved for reconsideration, which the district court summarily denied. TSV appealed.

II

TSV asks us to reverse the district court's dismissal of its complaint against Nova. We review de novo a district court's dismissal based on Federal Rule of Civil Procedure 12(b)(6). *Horwitz v. Schneider Nat., Inc.*, 992 F.2d 279, 281 (10th Cir. 1993). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). We must accept a complaint's allegations as true, but that acceptance "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The obligation of the insurer is a question of contract law and will be determined by reference to the terms of the insurance policy." *Knowles v. United Servs. Auto. Ass'n*, 832 P.2d 394,

5

396 (N.M. 1992). In construing exclusionary clauses in New Mexico, courts must try to give effect to the reasonable expectations of the insured. *Id.*

In urging us to reverse the district court, TSV's primary argument is that Nova owes it coverage not for first-party damages, but only for third-party liability that it argues the Owned-Property Exclusion does not reach. Pointing to the insuring clause, TSV argues that to read the Exclusion as foreclosing coverage for the prospective third-party claims of New Mexico and the United States would "eviscerate the essence of a third-party liability policy." Appellant Opening Br. at 35. The New Mexico Supreme Court, TSV notes, construes exclusionary clauses narrowly, *Knowles*, 832 P.2d at 396, enforcing only those not "in irreconcilable conflict with the insuring clause," *id.* at 398. Such a conflict exists here, TSV argues, because the district court's interpretation of the Owned-Property Exclusion cuts strongly against the pro-coverage expectation suggested by the broad language of the Policy's insuring clause and even by the word "general" in the Policy's title. Appellant Opening Br. at 36. Thus, TSV posits that the Owned-Property Exclusion excludes coverage for first-party property damage, but not coverage for third-party liability arising from an event on the insured's property that caused first-party property damage.[6]

---

[6] In support of this narrow construction of the Owned-Property Exclusion, TSV cites to an analysis of the Exclusion by the International Risk Management Institute, Inc. (IRMI), a group that provides insurance-policy analysis to businesses and other professionals. In January 2002, IRMI published an analysis of a number of 2001 changes made to commercial general-liability policies, including the Owned-Property Exclusion now before us. IRMI concluded that the language of the

TSV's interpretation runs counter to the Policy's language.[7] The Policy's insuring clause first sets out that Nova "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." R. vol. 5 at 173. The Policy later lists multiple exclusions for damages to which the policy does not apply, including the Owned-Property Exclusion. That Exclusion denies coverage for damage to "[p]roperty you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for . . . restoration . . . of such property *for any reason, including prevention of . . . damage to another's property*." *Id.* at 176 (emphasis added).

We read the Policy as one "complete and harmonious instrument designed to accomplish a reasonable end." *Knowles*, 832 P.2d at 396 (quoting *Safeco Ins. Co. of Am., Inc. v. McKenna*, 565 P.2d 1033, 1037 (N.M. 1977)). In doing so, we conclude

---

Exclusion, as amended into its present form, plainly stated that the costs of repairs to an insured's own property could not be covered as a third-party liability simply by claiming that the repairs were intended to avoid damage to neighboring property rather than to benefit the insured party's own interests (in response to recent claims that had done so). International Risk Management Institute, Inc., *The 2001 ISO CGL Revision*, *available at* http://www.irmi.com/articles/expert-commentary/the-2001-iso-cgl-revision (Jan. 2002). TSV takes the misleading-liability circumstance envisioned by IRMI and uses it to urge us to read the Exclusion's "for any reason" very narrowly, essentially asking us to ignore the words "for any reason."

But nowhere does the analysis, contrary to TSV's assertion, state that the Exclusion was intended "only" to apply to the circumstance described by IRMI. Appellant Opening Br. at 33. And there is no reasonable way to read the Exclusion's words "for any reason" that does not implicate, at minimum, more than one reason.

[7] We assume for the sake of argument that TSV was immediately liable to governmental authorities for the contamination of its property.

that this language narrowed the definition of property damage that can give rise to covered third-party liability. To be covered, the liability cannot be for damage to property that the insured party owns, rents, or occupies. Thus, the Exclusion defeats coverage for TSV's remediation costs incurred because of soil contamination on the resort's land, no matter that the reason for the costs was third-party liability. And that coverage limitation creates no irreconcilable conflict with the insuring clause; it simply creates an exclusion to it. *See United Nuclear Corp. v. Allstate Ins. Co.*, 285 P.3d 644, 650 (N.M. 2012) ("An exclusion does not conflict with an insurance policy's insuring agreement simply because it affords less or different coverage as compared with what the policy would provide without the exclusion; that is the very purpose of an exclusion, to restrict the scope of the policy beyond what would otherwise be covered.")

In addition, we see another problem with TSV's argument. TSV argues that the policy exclusion applies only to first-party-property-damage claims and not to third-party-liability claims, pointing out that the Exclusion does not contain the word "liability." *See* R. vol. 5 at 176. But we must remember that the entire policy concerns "Commercial General Liability." *Id.* at 173. So, despite TSV's claim to the contrary, we are not "read[ing] the word 'liability' into the 'owned or occupied' property exclusion," Appellant Reply Br. at 13—we are simply reading the document as a whole.[8]

---

[8] Indeed, a number of the other exclusions in the liability policy do not explicitly contain the word "liability." TSV's approach would nullify them too.

8

TSV also argues that the district court "leapfrogged" the main issue. Appellant Opening Br. at 33. TSV says that the district court wrongly focused on the Exclusion's example of "prevention of . . . damage to another's property," *see* R. vol. 5 at 176, when the situation at the ski resort involved not only prevention of future damage to a third party's property, but immediate third-party liability to New Mexico for the environmental violations. But even if immediate liability was a separate reason for the clean-up restoration costs on the insured's property, the insured's costs would still occur for a reason (liability to New Mexico and the United States for environmental violations) and fall within the "any reason" language of the exclusion. *Id.*

III

TSV points to a number of state and federal cases to support its interpretation of the Policy. The cases do indeed interpret various owned-property exclusions in insurance policies as not excluding third-party liability claims arising from damage on the insured's property. *See, e.g.*, *Anderson Dev. Co. v. Travelers Indem. Co.*, 49 F.3d 1128, 1134 (6th Cir. 1995) (concluding that the owned-property exclusion did not bar coverage for damages caused by "a government mandate to conduct [an] environmental clean-up"); *Patz v. St. Paul Fire & Marine Ins. Co.*, 15 F.3d 699, 705 (7th Cir. 1994) ("The fact that the clean up occurred on [the insured's] land is irrelevant."); *Pac. Hide & Fur Depot v. Great Am. Ins. Co.*, 23 F. Supp. 3d 1208, 1222-23 (D. Mont. 2014) (finding support for the inapplicability of owned-property exclusions in environmental-remediation situations); *Unigard Mut. Ins. Co. v.*

*McCarty's, Inc.*, 756 F. Supp. 1366, 1369 (D. Idaho 1988) (concluding that the exclusion at issue "does not prevent coverage for *liability to third parties* caused by property damage to the insured's property"); *Upjohn Co. v. N.H. Ins. Co.*, 444 N.W. 2d 813, 819 (Mich. Ct. App. 1989) (finding an exclusion inapplicable because of public ownership of threatened environmental resources), *rev'd on other grounds by* 476 N.W.2d 392 (Mich. 1991).

But the policies in TSV's cases do not involve the broadened owned-property exclusion at issue here—one excluding repairs and restorations of owned property "for any reason." R. vol. 5 at 176. We return to this phrase of the Policy again and again, because it decides the case. Many of TSV's arguments, including those resting on the above-cited cases, simply fall flat when faced with this phrase of the Policy.

In contrast, Nova's cited cases interpret the same policy-exclusion language at issue in this case. Its cases conclude that the broadened language of the Owned-Property Exclusion, as in Nova's policy, excludes coverage for clean-up costs incurred because of property damage to the insured's property, no matter whether done to prevent property damage to third parties or for any other reason. *See, e.g.*, *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 518 (5th Cir. 2014); *Clarient, LLC v. Essex Ins. Co.*, 712 F.3d 1246, 1249-50 (8th Cir. 2013); *Castle Vill. Owners Corp. v. Greater N.Y. Mut. Ins. Co.*, 64 A.D.3d 44, 52 (N.Y. App. Div. 2009); *Watertown Tire Recyclers, LLC v. Nortman*, 788 N.W.2d 384, 2010 WL 2403094, at *2-*3 (Wis. Ct. App. 2010) (unpublished table decision).

10

In response, TSV argues that not all of Nova's cited cases dealt with the precise pattern of facts here, where environmental contamination caused immediate third-party liability, as opposed to merely potential liability or first-party property damages masquerading as third-party liability. Regardless, courts have interpreted exclusions with the same broad language at issue here to exclude coverage, as a plain reading compels. And, as discussed above, an analysis of the most relevant factor— the language of the Policy—shows that the Owned-Property Exclusion does reach the kind of environmental clean-up effort in which TSV engaged.

In trying to distinguish Nova's supportive cases, TSV also argues that the "only reason" it performed environmental remediation efforts was the third-party liability it faced. Appellant Reply Br. at 12. To support that argument, TSV briefly notes that the "remediation" it performed during the clean-up is not enumerated in the Owned-Property Exclusion's list of "repair, replacement, enhancement, restoration or maintenance" for which costs would be excluded. *Id.*; R. vol. 5 at 176.

But whatever formal name or label TSV gives it (even if also accurate), "restoration" accurately describes the process TSV initiated to clean up its soil contamination and to prevent its spread. *Restoration*, Oxford English Dictionary (3d ed. 2010) ("The action of restoring a thing to a former state or position; the fact of being restored or reinstated."); *see Watertown Town Recyclers, LLC*, 2010 WL 2403094, at *3 ("Giving the term 'restoration' its ordinary meaning, it is apparent that returning contaminated property to something much closer to its former non-contaminated state is 'restoration' . . . ."). And even if regulatory liability was the

11

"only reason" TSV remediated its soil, Appellant Reply Br. at 12, the Exclusion excludes coverage for the costs of restoring your own property "for any reason," after suffering damage, R. vol. 5 at 176.

IV

Nor do we find the Exclusion's relevant language ambiguous. An insurance-policy's language is ambiguous if it is "reasonably and fairly susceptible of different constructions." *Knowles*, 832 P.2d at 396 (quoting *Sanchez v. Herrera*, 783 P.2d 465, 469 (N.M. 1989)). Ambiguities in insurance-policy language are construed against the insurance-company drafter. *Id.* But New Mexico courts "should not 'create ambiguity where none exists, and an ambiguity does not exist merely because the parties hold competing interpretations' about the meaning of a policy provision." *United Nuclear Corp.*, 285 P.3d at 647-48 (quoting *City of Santa Rosa v. Twin City Fire Ins. Co.*, 143 P.3d 196, 198 (N.M. Ct. App. 2006)).

Neither of TSV's two primary cases interpreting an owned-property exclusion as ambiguous dealt with the version of the owned-property exclusion at issue here. *Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 28 F. Supp. 2d 448, 451 (E.D. Mich. 1998); *Allstate Ins. Co. v. Dana Corp.*, 759 N.E.2d 1049, 1055-56 (Ind. 2001). We see nothing ambiguous in Nova's owned-property exclusion, in particular its exclusion of damage to an insured's property, including restoration costs "for any reason, including prevention of . . . damage to another's property." R. vol. 5 at 176.

12

## V

Nor does TSV's appeal to public policy win it coverage. TSV argues that limiting Policy coverage to situations where an insured allows environmental contamination to spread to the property of third parties violates New Mexico public policy. In TSV's view, that result encourages insureds to let environmental contamination spread beyond their own property to obtain policy coverage. Only then, TSV says, when the insured party is more certain of indemnification, will it engage in costly clean-up efforts.

We acknowledge that a policy exclusion is void if it "conflict[s] with public policy stated in express statutory language or by indication of legislative intent." *Jimenez v. Found. Reserve Ins. Co.*, 757 P.2d 792, 794 (N.M. 1988). But our ruling does not create an incentive to allow environmental contamination to spread. First, we note that TSV has never responded to the district court's finding that an insured's intentionally delaying clean up would offer the insured no benefit in view of the Policy's "Expected Or Intended Injury" exclusion. R. vol. 6 at 237; R. vol. 5 at 174. That exclusion denies coverage when liability arises from "'property damage' expected or intended from the standpoint of the insured." R. vol. 5 at 174. In addition, an intentional clean-up delay would likely make a company vulnerable to later governmental-enforcement actions—actions that might harm a company's pocketbook and reputation more than would cleaning up the original damage.

In short, TSV acted commendably in this situation by promptly cleaning up the contamination and preventing damage to valuable public and environmental

13

resources. But that commendable behavior does not give it a free pass to avoid the effects of a plainly worded policy exclusion, which we determine that the New Mexico Supreme Court would find unambiguously excludes the costs of the clean-up from indemnification.

## CONCLUSION

For the reasons stated, we affirm the district court's dismissal of TSV's complaint. We also deny TSV's Motion for Certification.

Entered for the Court


Gregory A. Phillips
Circuit Judge

14