This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38518

**PAUL KINZELMAN,**

Plaintiff-Appellant,

v.

**STEWART TITLE GUARANTEE COMPANY,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**Cindy M. Mercer, District Judge**

Paul Kinzelman
Peralta, NM

Pro Se Appellant

Moses, Dunn, Farmer & Tuthill, P.C.
Joseph L. Werntz
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Plaintiff Paul Kinzelman appeals the grant of summary judgment in favor of Defendant Stewart Title Guarantee Company, dismissing Kinzelman's amended complaint both for breach of contract relating to the denial of his claim under a title insurance policy and for fraud. The district court granted summary judgment because it concluded that coverage under the policy, which was issued to a separate entity, ended before Kinzelman made his title insurance claim. While we agree with the district court that coverage terminated before Kinzelman made his claim and that the grant of summary judgment for breach of contract was warranted on this basis, we do not agree this was a

proper basis for summary judgment on Kinzelman's fraud claim. We therefore affirm in part and reverse in part.[1]

## BACKGROUND

**{2}** This lawsuit arose from Stewart Title's denial of Kinzelman's claim under a title insurance policy on an unimproved tract of land in Valencia County, Lot 54, issued to Pensco Pension Services, Inc. (Pensco), as custodian for the benefit of (FBO) Kinzelman's individual retirement account (IRA). Based on this denial, Kinzelman sued Stewart Title for breach of contract.

**{3}** Stewart Title eventually filed a motion for summary judgment. The following material facts, which Kinzelman specifically admitted, were set out in Stewart Title's motion. Pensco Pension Services, Inc., Custodian FBO Paul M. Kinzelman, IRA #KI 120, purchased Lot 54 by warranty deed in July 2001. Stewart Title issued an owner's policy of title insurance to "Pensco Pension Services, Inc." for Lot 54 (the Policy), effective on the date of the property purchase. In 2005, Pensco conveyed Lot 54 by quitclaim deed to Zia Trust, Inc. as Custodian for Paul Kinzelman IRA # 964770 (Zia Trust). In 2016, Zia Trust conveyed Lot 54 by quitclaim deed to Paul Kinzelman Living Trust. In 2018, Kinzelman submitted a claim to Stewart Title based on a purported title defect predating Pensco's 2001 purchase of Lot 54. Stewart Title denied the claim.

**{4}** In its motion for summary judgment, Stewart Title sought dismissal of Kinzelman's complaint and argued, in relevant part, that (1) Kinzelman was not an insured under the Policy and consequently could not pursue a claim under the Policy; and (2) regardless, the conveyances of Lot 54 by quitclaim deed terminated coverage under the Policy. Kinzelman countered that he could submit a claim by way of an assignment or by virtue of his status as a third-party beneficiary or real party in interest, and that termination of coverage was irrelevant. At the same time, Kinzelman filed an amended complaint in which he both reasserted his breach of contract claim and asserted a new claim for fraud. In reply, Stewart Title effectively conceded that Kinzelman could pursue a claim under the Policy through the assignment, but maintained that summary judgment was appropriate because coverage under the Policy had terminated. The district court granted Stewart Title's motion, reasoning that "coverage under the title insurance policy issued to Pensco Pension Services, Inc. terminated when the property was conveyed in November 2005." In so doing, the court dismissed Kinzelman's amended complaint. Kinzelman then moved for reconsideration, raising new legal arguments. After a hearing, the district court denied the motion, and this appeal followed.

## STANDARD OF REVIEW

**{5}** To the extent our review requires the interpretation of an insurance policy, our review is de novo. *See City of Santa Rosa v. Twin City Fire Ins. Co.*, 2006-NMCA-118, ¶ 7, 140 N.M. 434, 143 P.3d 196. Likewise, our review of the district court's grant of

---

[1]Kinzelman filed a motion in this Court for leave to file additional information. In his brief in chief, Kinzelman requests that the motion be withdrawn. We grant Kinzelman's request.

summary judgment is de novo. *See Zarr v. Wash. Tru Sols., LLC*, 2009-NMCA-050, ¶ 9, 146 N.M. 274, 208 P.3d 919. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted); *see* Rule 1-056(C) NMRA. Only if the movant makes a prima facie showing that they are entitled to summary judgment does the burden shift to the party opposing summary judgment to demonstrate the existence of facts requiring trial on the merits. *See Lopes*, 2014-NMCA-097, ¶ 6.

## DISCUSSION

**{6}** The parties dispute, as a threshold matter, whether Kinzelman can pursue a claim under the Policy.[2] We need not resolve this dispute, because even if we assume Kinzelman stood in the shoes of Pensco for purposes of the Policy, we agree with the district court that "coverage under the title insurance policy issued to Pensco Pension Services, Inc. terminated when the property was conveyed in November 2005."[3] Although this conclusion warranted summary judgment on Kinzelman's breach of contract claim, it did not warrant summary judgment on his fraud claim, as we next explain.

### I. Fraud

**{7}** Kinzelman contends on appeal that termination of coverage under the Policy does not preclude his claim for fraud. Relatedly, he argued below that Stewart Title's summary judgment motion, having been based on his original complaint, was ineffective against his amended complaint. Stewart Title neither addressed Kinzelman's fraud claim below, nor addresses it on appeal.

**{8}** Stewart Title sought summary judgment on Kinzelman's original complaint, relying in part on the absence of a contractual relationship between it and Kinzelman. The district court nonetheless granted summary judgment on Kinzelman's amended complaint, thereby including Kinzelman's newly asserted fraud claim in the judgment. As justification, the district court cited the termination of coverage under the Policy—i.e., the absence of a contractual relationship between Stewart Title and Kinzelman. A contractual relationship, however, is not necessarily an element of fraud. *See* Rule 13-1633 NMRA (omitting the existence of a contract in the list of elements of fraudulent misrepresentation). Moreover, in this case, it does not appear that Kinzelman's particular fraud claim depends on a contractual relationship between the parties. Stewart Title's motion for summary judgment, having relied on the absence of such a relationship, thus failed to make out a prima facie showing of entitlement to summary judgment on fraud. *See Farmington Police Officers Ass'n Commc'n Workers of Am. Local 7911 v. City of Farmington*, 2006-NMCA-077, ¶ 17, 139 N.M. 750, 137 P.3d 1204 ("In determining which

---

2In particular, the parties dispute whether Kinzelman was a third-party beneficiary or real party in interest. Kinzelman additionally contended below and maintains on appeal that he can pursue a claim as Pensco's assignee; Stewart Title does not appear to dispute this contention.

3Given the grounds on which the district court granted summary judgment, we need not address Kinzelman's argument that Stewart Title failed to conduct a proper title search.

issues of fact are material facts for purposes of Rule 1-056(C), we look to the substantive law governing the dispute."); *see also Brown v. Taylor*, 1995-NMSC-050, ¶ 8, 120 N.M. 302, 901 P.2d 720 (providing that, "until the moving party has made a prima facie case that it is entitled to summary judgment, the non-moving party is not required to make any showing with regard to factual issues" and that summary judgment is not proper if the moving party fails to make such a case (internal quotation marks and citation omitted)).

**{9}** More fundamentally, given that Kinzelman's amended complaint adding the fraud claim was filed *after* Stewart Title's motion for summary judgment, the motion necessarily did not address the fraud claim. It thus was error for the district court to grant summary judgment as to this claim. *See Brown*, 1995-NMSC-050, ¶ 8; *cf. Est. of Griego ex rel. Griego v. Reliance Standard Life Ins. Co.*, 2000-NMCA-022, ¶ 14, 128 N.M. 676, 997 P.2d 150 (providing that where the motion for summary judgment pertained solely to the original complaint—as that was the only complaint pending at the time—the summary judgment order neither granted, *nor could* have granted, judgment as to the first amended complaint). We accordingly reverse the grant of summary judgment on Kinzelman's fraud claim.

## II. Breach of Contract

**{10}** We next address the grant of summary judgment on Kinzelman's breach of contract claim. Determining first that the district court correctly concluded that coverage under the Policy terminated well before Kinzelman made his title insurance claim, thereby warranting summary judgment on his breach of contract claim, we then briefly explain why we reject Kinzelman's arguments against this result.

## A. Termination of Policy Coverage

**{11}** As relevant here, the Policy provided that Pensco, as the named insured, would maintain coverage under the Policy "only so long as the insured retains an estate or interest in the land, . . . or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest." It is undisputed that in 2005, Pensco conveyed Lot 54 to Zia Trust by quitclaim deed. When it did, Pensco retained no estate or interest in Lot 54 and made no warranties to Zia Trust. *See* NMSA 1978, § 47-1-30 (1947) (providing that a duly executed "quitclaim deed" shall "have the force and effect of a deed in fee simple to the grantee . . . of any interest the grantor owns in the premises, without warranty"); *see also, e.g., Waddell v. Bow Corp.*, 408 F.2d 772, 775 (10th Cir. 1969) (concluding that, under the New Mexico quitclaim statute, what is now Section 47-1-30, a quitclaim deed conveyed all of the grantor's interest). Thus, according to the Policy's terms, Pensco's coverage terminated in 2005 when Lot 54 was conveyed to Zia Trust by quitclaim deed. *See* 45 C.J.S. *Insurance* § 662 (2022) ("Title insurance coverage does not terminate where the insured retains an estate or interest in the property, but does so once the insured's interest in the land terminates, or when the insured transfers the land by quitclaim deed." (footnotes omitted)). Because coverage terminated well before Kinzelman made his title insurance claim under the Policy, no claim for breach of contract could arise. *Cf. Bernalillo Cnty.*

*Deputy Sheriffs Ass'n v. Cnty. of Bernalillo*, 1992-NMSC-065, ¶¶ 3-5, 114 N.M. 695, 845 P.2d 789 (holding that the insurer had no duty to defend an insured as to acts that allegedly occurred after the policy expired). Summary judgment accordingly was warranted on Kinzelman's breach of contract claim.

## B.    Lot 54 Was Not Transferred "By Operation of Law"

**{12}**    In an attempt to avoid this result, Kinzelman contends that Lot 54 was transferred to Zia Trust "by operation of law." Presumably, Kinzelman is referencing the Policy definition of "insured," which provides that an insured is "the insured named in Schedule A, and . . . those who succeed to the interest of the named insured *by operation of law* as distinguished from purchase including, but not limited to, heirs, distributes, devisees, survivors, personal representatives, next of kin, or corporate or fiduciary successors." (Emphasis added.) From this, we understand Kinzelman to argue that Zia Trust obtained Lot 54 by operation of law and, as a result, was insured under the Policy.[4]

**{13}**    This argument fails on numerous levels. For one, it is made for the first time in Kinzelman's reply brief, which alone is grounds for rejection. *See, e.g.*, *Hale v. Basin Motor Co.*, 1990-NMSC-068, ¶ 23, 110 N.M. 314, 795 P.2d 1006 (declining to address an issue because it was first raised in the reply brief); *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 ("To preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)).

**{14}**    Second, even were this issue timely raised, it provides no basis for reversal, given the lack of accompanying record and legal support. In support of his contention that Lot 54 was transferred to Zia Trust by operation of law, Kinzelman asserts, as a factual matter, that the quitclaim deed from Pensco to Zia Trust was not a purchase because "Zia Trust did not give Pensco Trust any remuneration or compensation for consideration" and, as a legal matter, that "[t]he transfer was no different than when the assets and liabilities of one company are assumed by another company by operation of law." Kinzelman, however, cites no record evidence in support of his factual assertions and no authority in support of his legal contentions. Our case law has long provided that where a party fails to cite any portion of the record to support its factual assertions, this Court need not consider the party's argument. *See, e.g.*, *Santa Fe Expl. Co. v. Oil Conservation Comm'n*, 1992-NMSC-044, ¶ 11, 114 N.M. 103, 835 P.2d 819. Further, this Court will not consider propositions that are unsupported by citation to authority, *ITT Educ. Servs., Inc. v. Tax'n & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 244, and where a party cites no authority to support an argument, we need not review the issue, *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. In short, we reject Kinzelman's argument that Lot 54 was transferred to Zia Trust by operation of law.

---

4Kinzelman does not address the fact that, at the time he made his title insurance claim, Lot 54 had been transferred from Zia Trust to Kinzelman Trust. To the extent Kinzelman also argues this transfer was "by operation of law," this argument fails for the same reasons discussed in this section.

**C.      Kinzelman's Additional Arguments**

**{15}**    Kinzelman makes numerous other arguments against affirmance of summary judgment on his breach of contract claim, chief among them that the Policy is ambiguous as to when Stewart Title's liability under the Policy terminated. Kinzelman cites the absence both of a definition of "coverage" and of a provision stating whether the Policy is an "occurrence" or a "claims-made" policy. This, Kinzelman contends, makes the Policy ambiguous and creates a fact issue precluding summary judgment. We are not convinced. We first observe that whether a contract is ambiguous is a question of law, not fact, and it is for a court, not a jury, to resolve any such ambiguities. *See Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 19, 123 N.M. 752, 945 P.2d 970 ("The resolution of ambiguities becomes a matter for the court and is often described as a matter of law rather than a factual determination."). Furthermore, the absence of a definition or particular provision in a policy does not, as Kinzelman suggests, necessarily render a policy ambiguous. *See Battishill v. Farmers All. Ins. Co.*, 2006-NMSC-004, ¶ 8, 139 N.M. 24, 127 P.3d 1111 ("[A]n insurance policy is not rendered ambiguous merely because a term is not defined; rather, the term must be interpreted in its usual, ordinary, and popular sense." (internal quotation marks and citation omitted)); *cf. Rummel*, 1997-NMSC-041, ¶¶ 20-21 (observing that a court will look to the insurance contract as a whole and to extrinsic evidence in resolving contract ambiguities). In sum, Kinzelman's arguments regarding policy ambiguity do not alter our conclusion that summary judgment on his breach of contract claim was warranted. *See Health Plus of N.M., Inc. v. Harrell*, 1998-NMCA-064, ¶ 10, 125 N.M. 189, 958 P.2d 1239 ("[T]he plaintiff has the burden of showing that the language of [an insurance] contract is ambiguous.").

**{16}**    Finally, Kinzelman alleges various other points of error. Having considered the briefing, record, and relevant law on these points, we conclude that these claims, to the extent they are preserved and properly before this Court, are without merit and provide no basis for reversal of the summary judgment on Kinzelman's breach of contract claim. We, therefore, decline to address them further. *See, e.g.*, *Aguilar v. State*, 1988-NMSC-004, ¶ 1, 106 N.M. 798, 751 P.2d 178 (summarily disposing of certain remaining issues based on their lack of merit). *See generally Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 (stating that the appellate court presumes that the trial court is correct, and that the burden is on the appellant to clearly demonstrate that the trial court erred).

**CONCLUSION**

**{17}**    For the foregoing reasons, we affirm the grant of summary judgment on Kinzelman's breach of contract claim. We, however, reverse the grant of summary judgment on his fraud claim and remand for further proceedings consistent with this opinion.

**{18}    IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**